**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 92-8611

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JUAN ARON SANCHEZ-SOTELO, JOSE RABELO RENTERIA, and RICARDO GARCIA,

Defendants-Appellants.

Appeals from the United States District Court
for the Western District of Texas

(November 16, 1993)

Before SNEED[1], REYNALDO G. GARZA and JOLLY, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

Juan Aron Sanchez-Sotelo, Jose Rabelo Renteria, and Ricardo Garcia appeal their convictions for conspiracy to possess cocaine and possession of cocaine with intent to distribute. We AFFIRM the district court in all respects, except we VACATE the order denying the appellants' motion for new trial based on extraneous jury influence and REMAND the cause for further proceedings.

I. FACTS

---

[1] Senior Circuit Judge of the Ninth Circuit, sitting by designation.

This case arises from an undercover narcotics sting operation in El Paso, Texas. Sergio Filemon Sotelo Sanchez ("Filemon"), the key person in the criminal conspiracy, pled guilty and is not a party to this appeal. The appellants are Filemon's brother, Juan Aron Sotelo Sanchez ("Sotelo"); Jose Renteria; and Ricardo Garcia.

On November 13, 1991, an undercover law enforcement agent met with Filemon, purchased a one-half ounce sample of cocaine from him, and agreed to meet with him later that day in the parking lot of a toy store to purchase another half-ounce. After the initial purchase, law enforcement agents tracked Filemon as he drove to several places including the apartment of his brother Sotelo's girlfriend. The meeting between the undercover agent and Filemon was delayed for two hours because, according to Filemon, Sotelo "had sent the guy that takes care of the stash house on an errand." At the meeting, the undercover agent purchased another one-half ounce sample and agreed to purchase a much larger quantity of cocaine after she obtained the money to do so. After this meeting, Filemon drove to his house on Mockingbird Street. The trial testimony conflicts as to whether Sotelo lived at the house on Mockingbird Street with his brother, Filemon.

On November 21, the undercover agent met with Filemon in the same toy store parking lot and agreed to exchange one kilogram of cocaine later that day for $14,500 (the "one-kilo exchange"). Filemon then drove in a maroon pickup truck to a house on Rubicon Street where he picked up his brother, Sotelo. The two men drove

to a gas station and met with several other men who arrived in a gray pickup truck. After this meeting, Filemon and Sotelo drove back to the toy store parking lot.

A few hours later, the undercover agent returned to the parking lot where Filemon and Sotelo were waiting in the maroon truck to consummate the one-kilo exchange. Filemon got out of the truck, leaving Sotelo in the passenger side, and entered the undercover agent's truck. In the recorded conversation that followed, Filemon told the undercover agent to retrieve the kilogram of cocaine from an empty Chevrolet Cavalier in the parking lot. After retrieving the cocaine, the undercover agent handed Filemon an envelope containing $14,500. Filemon agreed to meet later that day in the same parking lot to exchange a larger quantity of cocaine (the "four-kilo exchange").

After the one-kilo exchange, Filemon and Sotelo drove to a pool hall where they met with appellant, Garcia. The three men then went to a motel where they were later met by two other men who arrived in a blue pickup truck driven by appellant, Renteria. After the men conversed, Filemon, Sotelo and Garcia drove away in Filemon's maroon truck. Renteria drove away alone in the blue truck. Both trucks arrived at the toy store parking lot where Garcia entered the Cavalier that Filemon used in the earlier one-kilo exchange. Garcia then drove the Cavalier around the parking lot, parking for a short period of time, and then driving around the parking lot again. Simultaneously, Filemon in the maroon truck

-3-

and Renteria in the blue truck drove around the parking lot in a manner that suggested they were searching for signs of law enforcement personnel. After a short meeting between the two trucks, Filemon drove to a gas station across the street and called the undercover agent regarding the planned exchange.

The undercover agent arrived at the parking lot at 5:15 p.m. to consummate the four-kilo exchange. The agent parked near Filemon's maroon truck. Filemon left Sotelo in the maroon truck and entered the undercover agent's car where he explained, in a recorded statement, that they were "waiting for the delivery of the cocaine." Filemon offered to have Sotelo drive the maroon truck close to the undercover agent's car in order to hand the drugs from the truck to the car, but abandoned this method of exchange at the agent's request. As Garcia drove the Cavalier by the undercover agent's car, Filemon stated that the car was driven by one his "business partners." The gray pickup truck then arrived in the parking lot and parked next to the maroon truck that Sotelo was sitting in. Filemon exited the undercover agent's car, and Sotelo exited the maroon pickup, and then Filemon met with the driver of the gray truck. Afterwards, Filemon took a toolbox from the gray truck and brought it to the undercover agent's car. Agents closed in and arrested Filemon, Sotelo, Renteria and, after a high speed

chase, Garcia.[2]  Others were also arrested, but they are not parties to this appeal.

## II. PROCEDURAL HISTORY

The appellants were charged with two counts of federal narcotics violations.  The first count charged the appellants with conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. sections 841(a)(1) and 846.  The second count charged the appellants with possession of cocaine with intent to distribute, in violation of 21 U.S.C. section 841(a)(1).

The case went to trial on July 20, 1992 and on July 22, 1992, the jury convicted Sotelo and Garcia on both counts.  The jury convicted Renteria on count one, but acquitted him on count two. On December 1, 1992, Garcia was sentenced to 136 months of imprisonment and to a five-year term of supervised release.  Garcia was also ordered to pay $100 for special assessments.  Renteria was sentenced to 121 months of imprisonment and to a five-year term of supervised release; he was also specially assessed $50.  Sotelo was sentenced to concurrent 151-month terms of imprisonment on each count and to a five-year term of supervised release.  Sotelo was also specially assessed $100.

After the trial, defense counsel made two motions for a new trial.  First, defense counsel asked for a new trial based on the

---

[2]Agents found two pounds of marijuana in the Cavalier after the car stalled and they arrested Garcia.  No cocaine, however, was found in the car.

affidavit of a trial juror that the jury had been exposed to an improper extraneous influence that tainted the verdict. The juror attested that another "juror drove by the residence of one defendant who lived on Mockingbird [Street], and complained during deliberations that the defendants must be drug dealers, otherwise they couldn't afford to live in houses like the one on Mockingbird [Street]."

Garcia moved for a new trial on the basis of ineffective assistance of counsel. He asserted that his lawyer failed to call certain prisoners who overheard Filemon state that Garcia was not involved in the conspiracy. In a recorded conversation, his lawyer stated that he did not call the witnesses because the government could have rebutted with the confession of Garcia's co-defendants.

The district court denied both motions without an evidentiary hearing. The district court denied the motion regarding extraneous influence because it stated that the house on Mockingbird Street belonged to Filemon who pled guilty and was not tried with the defendants. Accordingly, the district court viewed the information as not material to the guilt or innocence of the defendants and not possibly prejudicial to the defendants. The district court denied the motion regarding ineffective assistance of counsel because it viewed the claim as "border[ing] on the frivolous" and because even if proffered, the claim would have been inadmissible as "pure hearsay."

Appellants filed for reconsideration of the district court's order. Appellants attached a supplemental affidavit in which the juror stated that the jurors assumed that the house on Mockingbird Street belonged to one of the defendants on trial, but not necessarily Filemon. The district court denied the motion for reconsideration without a hearing because the allegations related to the mental processes of the jurors and were not admissible under Federal Rule of Evidence 606(b).

### III. DISCUSSION

The appellants claim the district court erred in: (1) finding sufficient evidence to support their convictions for conspiracy to possess cocaine and possession of cocaine with intent to distribute; (2) allowing an undercover agent to comment on her tape-recorded conversations referencing Sotelo; (3) not declaring a mistrial with respect to the prosecutor's closing remarks; (4) not defining "knowingly" or "intent" in its jury charge; and (5) denying their motion for new trial based on evidence of an extraneous influence on the jury.

Garcia also claims that the district court erred in denying his motion for new trial based on ineffective assistance of counsel.

The district court did not err in: (1) finding sufficient evidence to support the appellants' convictions for conspiracy and possession with intent to distribute; (2) allowing the undercover agent to comment on her tape-recorded conversations; (3) refusing

to declare a mistrial; (4) declining to define "knowingly" and "intent"; and (5) denying all of the appellants' motions for mistrial.  Finding no error, we AFFIRM.

A.   Sufficiency of the evidence

Appellant Sotelo asserts that there was insufficient evidence to support his conviction for the possession of cocaine with the intent to distribute.  Appellant Renteria asserts that there was insufficient evidence to convict him of conspiracy with intent to distribute cocaine.  Appellant Garcia asserts that there was insufficient evidence to convict him of either conspiracy to possess cocaine or possession of cocaine with intent to distribute.

We review the appellants' claims under the well established standard that the Court view the evidence, "whether direct or circumstantial, and all the inferences reasonably drawn from it, in the light most favorable to the verdict." U.S. v. Salazar, 958 F.2d 1285, 1991 (5th Cir.), cert. denied, ___U.S.___, 113 S.Ct. 185 (1992).  "The ultimate test for the sufficiency of the evidence challenges is whether a reasonable jury could find that the evidence establishes guilt beyond a reasonable doubt." Id. (citing United States v. Gonzales, 866 F.2d 781 (5th Cir.), cert. denied, 490 U.S. 1093, (1989)).

As to the substantive offense of possession, " the government must prove beyond a reasonable doubt that the defendants knowingly possessed [cocaine] and intended to distribute it.  Possession may be actual or constructive, may be joint among several defendants,

and may be proved by direct or circumstantial evidence." <u>U.S. v. Valdiosera-Godinez</u>, 932 F.2d 1093, 1095 (5th Cir. 1991) (<u>citing</u> <u>United States v. Gardera Carrasco</u>, 830 F.2d 41, 45 (5th Cir. 1987), <u>cert. denied</u>, ___U.S.___, 113 S.Ct. 2369 (1993).  With regard to the conspiracy offense,

> the government must prove beyond a reasonable doubt:  (1) the existence of an agreement between two or more persons to violate the narcotics laws; (2) the defendant knew of the conspiracy; and (3) the defendant voluntarily participated in the conspiracy. . . . No element need be proved by direct evidence, but may be inferred from circumstantial evidence.  An agreement may be inferred from "concert of action."

<u>Id</u>. (<u>citing</u> <u>United States v. Arzola-Amaya</u>, 867 F.2d 1504, 1511 (5th Cir.), <u>cert. denied</u>, ___U.S.___, 110 S.Ct. 322 (1989)).

### 1.    Appellant Sotelo

Sotelo argues that insufficient evidence exists to convict him for possession of cocaine.  Since the district court did not instruct the jury that Sotelo could be held liable for the foreseeable acts of his co-conspirators, proof of the conspiracy alone will not sustain the possession charge against Sotelo. <u>United States v. Pierce</u>, 893 F.2d 669, 676 (5th Cir 1990) (requiring <u>Pinkerton</u> instruction before defendant could be convicted of object crime committed by co-conspirators).  Furthermore, no evidence exists that Sotelo actually possessed the cocaine.  Therefore, the Government's possession case against Sotelo requires that a jury could have found beyond a reasonable doubt that Sotelo constructively possessed the cocaine.  "`Constructive possession'

is ownership, dominion, or control over illegal drugs or dominion over the premises where drugs are found." United States v. Pigrum, 922 F.2d 249, 255 (5th Cir.), cert. denied sub nom., Allen v. United States, 111 S. Ct. 2064 (1991).

Sotelo argues that his brother's statement to undercover agent Rodriguez that their meeting was delayed for two hours because Sotelo "had sent the guy that takes care of the stash house on an errand," is insufficient to prove his constructive possession of the cocaine. Sotelo further argues that even if his brother's statement is true, the fact that he sent the man on an errand does not show that he had control over the stash house or its contents. See Id. (holding that where the evidence was insufficient to show that defendant resided at house, her presence during search where drugs were found was insufficient to show constructive possession). Finally, Sotelo argues that in this case, no drugs were found at the "stash house."

Although each piece of evidence may not be sufficient in isolation to reasonably find constructive possession, the cumulative evidence against Sotelo is compelling. First, the evidence regarding Filemon's and Sotelo's "hand[ling]" of the majority of the ongoing drug business showed that Sotelo was heavily involved in the control of their cocaine exchanges generally. Second, Sotelo's presence at the planning and execution stages with Filemon showed his participation in the specific cocaine deals here at issue. Third, Sotelo's sending the person

who controlled the stash house on an errand shows that he had some control over the person who kept the specific cocaine used in at least one of the drug deals here at issue. Finally, the evidence at trial showed that although not generally available to handle the cocaine, Sotelo was, on this occasion, available to help deliver possession of the cocaine to the undercover agent via a drive-by exchange. We hold that this evidence, in the aggregate, would allow a reasonable juror to find that Sotelo had dominion and control over the cocaine--constructive possession.

Our review of the record, therefore, indicates that sufficient evidence exists to affirm Sotelo's conviction for possession of cocaine with intent to distribute.

### 2. Appellant Renteria

Appellant Renteria argues that there was insufficient evidence to convict him of conspiracy to distribute cocaine. Renteria argues that the only evidence implicating him was: (a) a Deputy Sheriff's identification of him at a brief meeting with Sotelo, Juan Sanchez and Garcia at the La Quinta motel; and (b) that he parked his blue truck next to Sotelo's maroon pickup in the toy store parking lot, and then drove to the center of the parking lot. Renteria also argues that although there was some circumstantial evidence connecting him to the conspiracy, "the critical missing element of proof is some adequate indication that [he] was ever aware of the existence of the conspiracy or intentionally joined

it." See United States v. Basey, 816 F.2d 980, 1002-03 (5th Cir. 1987).

We find that the evidence establishes that Renteria met with Filemon, Sotelo, and Garcia in a motel room prior to the four-kilo exchange. Renteria then followed Filemon and Sotelo back to the toy store parking lot. In the parking lot, Renteria parked his blue truck beside Filemon's maroon truck and met with Filemon. Renteria then parked his truck in another part of the parking lot and waited in his truck for one hour until the exchange took place. During that time he acted as if he were a look-out.

Based on this evidence, a reasonable jury could determine beyond a reasonable doubt that Renteria participated in the conspiracy. See United States v. Fernandez-Roque, 703 F.2d 808, 814-15 (5th Cir. 1983) (conspiracy only requires that the defendant was aware of the unlawful agreement and was associated somehow with the plan).

Our review of the record, therefore, indicates that sufficient evidence exists to affirm Renteria's conspiracy conviction.

### 3. Appellant Garcia

Garcia argues that the evidence was insufficient to prove beyond a reasonable doubt that he knew of and voluntarily participated in the conspiracy to distribute cocaine or that he constructively possessed cocaine. First, Garcia argues that the only evidence that he was a conspirator was that the Cavalier used in the one-kilo exchange was registered to his girlfriend, that he

drove the Cavalier around the parking lot before the four-kilo exchange, and that Filemon referred to him as a "business partner." Garcia argues that although this may constitute association and presence at the scene of the four-kilo exchange, it does not prove beyond a reasonable doubt that he knew of and participated in the conspiracy to possess cocaine. See United States v. Maltos, 985 F.2d 743, 746-47 (5th Cir. 1992). Second, Garcia argues that there is no evidence that he actually possessed cocaine, and that the evidence with respect to constructive possession is too speculative to support a conviction. Garcia argues that he entered the Cavalier after the one-kilo exchange, and that no cocaine was found in the car after the exchange.

Garcia correctly points out that since the district court did not give a Pinkerton instruction, the jury could not use the possession of cocaine by other conspirators to convict him. His possession conviction, therefore, rests on evidence of constructive possession.

Based on the circumstantial evidence of Filemon calling Garcia his "business partner," Garcia's meetings with Filemon after the one-kilo exchange and before the four-kilo exchange, Garcia's riding in the maroon truck with Filemon and Sotelo to the toy store parking lot, his driving of the Cavalier around the parking lot, and his high speed flight from the arrest scene, a reasonable jury could determine beyond a reasonable doubt that Garcia knew of and

joined in the conspiracy, and that he had constructive possession of the cocaine.

Our review of the record, therefore, indicates that sufficient evidence exists to affirm Garcia's conviction for conspiracy and possession.

B.    Undercover agent's testimony

Appellant Sotelo argues that the district court erred in allowing the undercover agent's testimony regarding her recorded conversations with Filemon, because this testimony constituted improper lay opinion testimony that tainted his conviction for conspiracy to possess cocaine.

We review evidentiary errors at trial for abuse of discretion. United States v. Lindell, 881 F.2d 1313, 1319 (5th Cir. 1989), cert. denied, 496 U.S. 926, 110 S.Ct. 2621, 110 L.Ed.2d 642 (1990). Although the government argues for the plain error standard, the other defense counsel's objection[3] is sufficient to invoke the abuse of direction standard for Sotelo. See Howard v. Gonzales, 658 F.2d 352, 355 (5th Cir. Unit A 1983) (stating that where one party objects, the court presumes the other parties have joined in the objection). In addition, to reverse a conviction, this court must find "a significant possibility that the testimony had a substantial impact on the jury." United States v. Cain, 587 F.2d 678, 682 (5th Cir.), cert. denied, 440 U.S. 975, 99 S.Ct. 1543, 59

---

[3]Defense counsel for Fred Smalley.

L.Ed.2d 793 (1979). During the trial, the prosecution submitted the transcript of a recording of one of the meetings between Filemon and the undercover agent. The transcripts related that the undercover agent asked Filemon who was in the maroon truck with him. Filemon answered, "[T]he guy that's with me is my brother." The undercover agent testified that the above statement meant Sotelo "would stay in the truck and would be watching the whole thing." At a later meeting, the undercover agent asked Filemon who was with him, and Filemon answered, "My brother." The undercover agent testified that the above statement meant that Filemon "and his brother [,Sotelo,] were going to do the deal."

Sotelo contends that the district court admitted the undercover agent's testimony in violation of Federal Rule of Evidence 701, which prohibits explanatory commentary where the language of the conversation would allow the jury to draw its own conclusions. See United States v. Dicker, 853 F.2d 1103, 1108-11 (3d Cir. 1988) (holding that Rule 701 should be applied in a manner that allows "the jury to draw its own conclusions" from the language of the conversation itself and that "additional analysis was irrelevant and should not be admitted"). Sotelo contends that the jury had transcripts of the tape-recorded conversations and that the undercover agent's testimony went beyond the meaning of the transcripts.

We find that the undercover agent's testimony goes beyond the plain meaning of the recorded conversation with Filemon. Hence, we

must determine whether there is a "significant possibility" that the district court's admission of this testimony had a "substantial impact on the jury." United States v. Cain, 587 F.2d at 682. Based on the evidence outlined above, the jury could have inferred, from evidence other than the undercover agent's interpretations, that Sotelo was knowingly involved in the cocaine conspiracy.

Therefore, we find that the district court did not abuse its discretion in admitting the undercover agent's testimony.

C.   Prosecutor's closing remarks

During closing remarks, the government asked the jury to "send a message to these drug dealers," to "send a message to other drug dealers," and to deter drug dealers from bringing "these drugs into our communities and into our homes." The government further pointed the jury's attention to the fact that the drug deal took place in the parking lot of a toy store and stated that "[w]omen, children, [and] parents" were in the parking lot. At this point, defense counsel objected to the government's reference to "women and children." The district court sustained the objection and instructed the jury to disregard the comment.

Appellants argue that the government's closing remarks constitute reversible error for three reasons. First, the comments had a prejudicial effect because they influenced the jury to convict the appellants based on a broad policy against drugs rather than on specific evidence of guilt. A juror's affidavit attests that another juror stated during deliberations that the jury should

-16-

convict the appellants in order to "send a message to the community."  Second, the court gave no cautionary instruction to the jury to curtail the prejudicial effect of the comments.  Third, because the evidence of guilt was "extremely thin," the comments harmed the appellants in the jury's determination of guilt.  <u>See</u> <u>United States v. Lowenberg</u>, 853 F.2d 295, 301-02 (5th Cir. 1988), <u>cert. denied</u>, 489 U.S. 1032, 109 S.Ct. 103 L.Ed.2d 228 .

Because the appellants objected to the "women, children, [and] parents" comments, this court reviews the district court's refusal to grant a mistrial with respect to these comments for abuse of discretion.  <u>United States v. Rocha</u>, 916 F.2d 219, 234 (5th Cir. 1990), <u>cert. denied</u>, ___ U.S. ___, 111 S.Ct. 2037, 114 L.Ed.2d 462 (1991).  However, because the appellants did not object to the government's "send a message" comments, this court reviews the district court's refusal to grant a mistrial with respect to those comments under the plain error standard.  <u>United States v. Robles-Pantoja</u>, 887 F.2d 1250, 1255 (5th Cir. 1989).  In determining whether the jury would have found the appellants guilty without the government's comments, this court must look at three factors:  (1) the magnitude of the prejudicial effect of the comments; (2) the efficacy of any cautionary instructions; and (3) the strength of the evidence of the appellants' guilt.  <u>Lowenberg</u>, 853 F.2d at 301-02.

First, a prosecutor may appeal to the jury to act as the conscience of the community.  <u>United States v. Brown</u>, 887 F.2d 537,

542 (5th Cir. 1989).  Second, the district court's instruction to the jury to disregard the "women, children, [and] parents" comments sufficiently curtailed the prejudicial effect of those comments. See United States v. Garza, 887 F.2d 55, 57 (5th Cir.), cert. denied, 495 U.S. 957 (1990).  Third, because of the ample evidence produced at trial, the "send a message" comments does not cast serious doubt on the propriety of the jury's verdict.

Accordingly, the district court did not abuse its discretion or commit plain error by refusing to grant a mistrial with respect to the prosecutor's closing remarks.

D.   Jury charge

The appellants argue that the district court committed reversible error by not defining "knowingly" or "intent" with respect to both the conspiracy charge and the possession charge. They argue that this failure was critical because the central issue in the their case was whether they "knowingly" participated in the conspiracy, and "knowingly" possessed the cocaine with the intent to distribute the drug.  United States v. Ojebode, 957 F.2d 1218, 1228 (5th Cir. 1992), cert. denied, 113 S.Ct. 1291, 122 L.Ed.2d 683 (1993).

Because one appellant objected to the district court's failure to give an extra instruction defining "knowingly" and "intent," this court reviews the instructions under the abuse of discretion standard.  See United States v. Bernal, 814 F.2d 175, 182 & n.14 (5th Cir. 1987).  Furthermore, in deciding whether the

district court abused its discretion, this court determines whether the requested instruction: (1) was a correct statement of the law; (2) was substantially given in the charge as a whole; and (3) concerned an important point in the trial so that the failure to give it seriously impaired the defendant's ability to effectively present a defense. United States v. Rochester, 898 F.2d 971, 978 (5th Cir 1990).

As the Government points out, the district court used the pattern jury instructions for criminal cases. Pattern Jury Instructions, Criminal Cases, Special Instruction 2.81 at 192 (1990). Furthermore, these instructions accurately reflect the law of sections 846 and 841(a)(1). Finally, "knowingly" and "intent" are used in their common meaning in the conspiracy and possession statutes and, therefore, do not require further instruction. United States v. Chenault, 844 F.2d 1124, 1131 (5th Cir. 1988).

Consequently, the district court did not abuse its discretion by refusing to define "knowingly" or "intent," in its jury charge.

E.    Motions for New Trial

1.    Extraneous influence

Appellants argue that the district court erred in denying their motion for new trial without an evidentiary hearing, based on evidence of prejudicial extraneous information. This court reviews the denial of a motion for new trial for abuse of discretion. United States v. Ortiz, 942 F.2d 903, 913 (5th Cir. 1991), cert.

denied sub nom., Garza v. U.S., ___U.S.___, 112 S.Ct. 2966 (1992).


The appellants argue that the juror's affidavits attesting the material and prejudicial impact of another juror's comments regarding the defendants' ability to afford the house on Mockingbird Street was error that at least requires remand for an evidentiary hearing to determine if this extrinsic evidence was actually prejudicial to the appellants. The appellants further argue that Fifth Circuit case law requires an evidentiary hearing to investigate a colorable claim of prejudicial extrinsic jury influence. United States v. Winkle, 587 F.2d 705, 714 (5th Cir.), cert. denied, 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979); United States v. Howard, 506 F.2d 865, 866 (5th Cir. 1975).

"Post-verdict inquiries into the existence of impermissible extraneous influences on a jury's deliberations are allowed under appropriate circumstances, . . . so that a `jury-man may testify to any facts bearing upon the existence of any extraneous influence, although not as to how far that influence operated upon his mind.'" Llewellyn v. Stynchcombe, 609 F.2d 194 (1980) (emphasis in original). Furthermore, this court has stated:

> Where a colorable showing of extrinsic influence appears, a court must investigate the asserted impropriety: the evidentiary inquiry before the district court . . . must be limited to objective demonstration of extrinsic factual matter disclosed in the jury room. Having determined the precise quality of the jury breach, if any, the district court must then determine whether there was a reasonable possibility that the breach was prejudicial to the defendant.... In this determination,

> prejudice is assumed in the form of a rebuttable presumption, and the burden is on the Government to demonstrate the harmlessness of any breach to the defendant.

Winkle, 587 F.2d at 714 (quoting Howard, 506 F.2d at 869).

The appellants correctly point out that Howard and Winkle require an investigation into the alleged jury breach before the district court may deny a motion for new trial in this situation. In United States v. Ortiz, 942 F.2d 903, 913 (5th Cir. 1991), this court held that the district court did not abuse its discretion in finding that a juror's report of a drive-by viewing of a defendant's house was not prejudicial[4]. In Ortiz, the district court made its determination only after it conducted an in camera interview with the jury foreperson, one of three jurors who submitted an affidavit and a juror chosen at random. In this case, however, the district court made no such investigation.

Therefore, the order denying the appellants' motion for new trial based on extraneous jury influence is vacated and the cause is remanded for further proceedings consistent with this opinion.

### 2. Ineffective assistance of counsel

With respect to Garcia's ineffective assistance of counsel claim, he argues that the district court erroneously determined that testimony by inmates regarding Filemon's alleged statement

---

[4] The juror commented that she had driven by the defendants' apartment complex during the course of the trial and that "they appeared to be very expensive condominiums not cheap apartments and where was the money coming from to pay for these very expensive condos." Ortiz, 942 F.2d at 913.

that Garcia was not involved in the conspiracy was inadmissible as hearsay. Garcia argues that the statement was either admissible as a declaration against interest under Federal Rule of Evidence 804(b)(3) or under the residual hearsay exception of Rule 804(b)(5). See United States v. Thomas, 571 F.2d 285 (5th Cir. 1978). Garcia further argues that his attorney's failure to call the exculpatory inmate witnesses because the attorney thought the government would respond with post-arrest statements by Garcia's co-defendants was facially incorrect under the Bruton rule. See Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (requiring exclusion of codefendant's confession that implicates a defendant unless the codefendant takes the stand and submits to cross-examination).

United States v. Briscoe, 742 F.2d 842, 846 (5th Cir. 1984), imposes three requirements for the use of the hearsay exception of Rule 804: "(1) the declarant must be unavailable; (2) the statement must be against the declarant's penal interest; and (3) corroborating circumstances must indicate the trustworthiness of the statement." The inmates' testimony regarding Filemon's statement does not qualify for the Rule 804(b)(3) exception to the hearsay rule for two reasons. First, the declarant, Filemon, was available to be cross-examined. Second, there were no corroborating circumstances, because the statement was allegedly overheard in prison. See Thomas, 571 F.2d 285. Furthermore, other evidence of Garcia's guilt indicates that any error made by

Garcia's counsel was harmless under <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Therefore, the district court did not abuse its discretion in denying Garcia's motion for new trial.

### IV. CONCLUSION

We affirm the district court in all respects except we vacate the order denying the appellants' motion for new trial based on extraneous jury influence, and remand the cause to the district court for further proceedings.

AFFIRMED in part, VACATED and REMANDED.