**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                                  No. 95-5139

GERALD PHILLIPS,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Herbert N. Maletz, Senior Judge, sitting by designation.
(CR-93-455-JFM)

Argued: April 5, 1996

Decided: June 27, 1996

Before MURNAGHAN and LUTTIG, Circuit Judges, and
MICHAEL, Senior United States District Judge
for the Western District of Virginia, sitting by designation.

_____

Affirmed in part and vacated in part by unpublished per curiam opin-
ion.

_____

**COUNSEL**

**ARGUED:** Richard Christopher Bittner, Glen Burnie, Maryland, for
Appellant. Jefferson McClure Gray, Assistant United States Attorney,
Baltimore, Maryland, for Appellee. **ON BRIEF:** Lynne A. Battaglia,
United States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Gerald Phillips was convicted by a jury of bank robbery, 18 U.S.C. § 2113(a), and bank larceny, 18 U.S.C. § 2113(b). The district court sentenced Phillips to 210 months imprisonment on the bank robbery count and to 120 months imprisonment on the bank larceny count, the bank larceny term to run concurrent with the bank robbery term. Phillips challenges his convictions on the grounds that the prosecutor made improper and prejudicial comments in closing argument. Phillips also challenges several evidentiary and legal rulings made by the district court. For the reasons stated herein, we affirm in part and vacate in part.

I.

The government ultimately secured conviction of Phillips after two unsuccessful attempts. The first trial ended in a mistrial after a detective made an inadvertent reference during direct examination to Phillips's having a "record." The defendant moved for a mistrial based upon the remark and the district court granted the motion. A second trial was held but the jury could not reach a verdict. Phillips was convicted after a third trial.

The evidence adduced at the third trial, viewed in the light most favorable to the government, shows that at 12:30 p.m. on November 15, 1993, Phillips and his sister engaged the services of a "hacker" taxi-driver who operated a Ford van. The driver eventually drove Phillips and his sister to the vicinity of a branch office of the Mercantile Bank and Trust Company.

At 1:25 p.m., the robber entered the bank and approached the teller station of Lee Boatwright. The robber asked Mr. Boatwright for some quarter and nickel coin wrappers. Mr. Boatwright handed two

2

bunches of wrappers to the robber who then stepped away to a service counter. Mr. Boatwright noticed that the man requesting the wrappers had a chipped and decayed upper front tooth. A few moments later, the robber approached the teller station of Patricia Wood. He handed her a note which read, "There's a gun pointed at you put money in the bag and no dye packs or I start shooting Big bills only!" Wood surrendered approximately $1,600 in small bills to the robber whom Wood recognized to be the person who had asked Mr. Boatwright for the coin wrappers. The robber took the money and fled the bank. Mr. Boatwright and another teller ran after the robber and saw him jump into a parked Ford van. The tellers were able to take down part of the van's license plate number which was later found to match the van that Phillips had hired.

Phillips spent the afternoon of November 15 at the apartment of his former girlfriend, Lynette Davis. After learning that the police suspected him of the robbery, Phillips left Ms. Davis's apartment and went to the apartment of Corliss Matthews, a friend of Ms. Davis. Phillips was eventually found hiding in a closet in Matthews's apartment and was placed under arrest.

After the arrest, investigators secured the consent of Ms. Davis to search her apartment. The search revealed a dozen or more nickel and quarter wrappers that matched the appearance of those Mr. Boatwright had given the robber. The government produced evidence at trial that the coin wrappers at issue were used almost exclusively by the Mercantile Bank & Trust Company -- few other banks in the area used the same type of coin wrapper. Ms. Davis testified that she had not seen the coin wrappers in her apartment before the afternoon of the robbery. The search of Ms. Davis's apartment also turned up $205 in small bills hidden in a tennis shoe belonging to Phillips.

Based upon this evidence, the jury returned a verdict of guilty to both the bank robbery and bank larceny counts.

II.

Phillips asks that we vacate his conviction due to allegedly improper statements made by the prosecutor in his closing argument. Specifically, Phillips maintains that the prosecutor made statements

3

(1) that improperly appealed to the jurors' sympathy for the bank teller witnesses and (2) that impermissibly suggested that the defendant had a burden of producing evidence. As we have noted previously, "[t]he test for reversible prosecutorial misconduct has two elements: (1) whether the prosecutor's remarks or conduct was improper, and (2) whether such remarks or conduct prejudicially affected the defendant's substantial rights so as to deprive [him] of a fair trial." United States v. Francisco, 35 F.3d 116, 120 (4th Cir. 1994), cert. denied, 115 S. Ct. 950 (1995). In addition, because defense counsel did not raise objections at trial to the remarks now challenged, we will vacate Phillips's conviction"only if the prosecution's improper conduct constituted plain error." United States v. Mitchell, 1 F.3d 235, 239 (4th Cir. 1993). We address Phillips's two prosecutorial misconduct arguments separately below.

A.

Phillips first maintains that the prosecutor, by remarking in his closing statement about protecting bank tellers from robbers, improperly asked the jury to make a general statement about its frustration with bank robberies through its verdict in the case. The prosecutor's comments in this regard are reproduced here at length:

> Now this is a case that, as Judge Maletz said at the beginning, is important for the defendant and for the United States. It is important for the defendant for obvious reasons. The charge of bank robbery by intimidation is a serious charge. And his interests are, therefore, protected by the requirement of proof beyond a reasonable doubt. And what I want to explain to you in the course of my argument this afternoon is why that standard has been met beyond a reasonable doubt.
>
> Now the case is also important to the United States, and to the people of the United States. And let's talk for a moment about why that is. There is an awful lot of talk about crime, especially in an election year like this one. But most of us can still hope that as we go about our daily lives and we take reasonable precautions and try to watch where we go and what time of day we do it and things like that,

4

ordinarily we can avoid being victims of crime most of the time. Occasionally, it will happen, that is the nature of things in modern society. For the most part, our experiences [with] crime are comparatively infrequent experiences for most of us, bad negative[ ] ones when they happen but, not something that happens periodically.

But, of course, for the tellers that were witnesses in this particular case that is not the way it is at all. Because they are people who work at an urban bank, and that puts them on the front lines where crime is going on for them. It is not a question of if, but when they are next going to be victims of crime.

You heard a number of them, I believe, Mr. Spence testified he has been in six or seven robberies. Mr. Boatwright was only in the bank for only two years and he has been in about four. For them when they go through one robbery they know that it is three months, four months, something like that and they are going to be facing another robbery.

But one of the most important function[s] that our system has is protecting people who are on the front line, the way these tellers are, where they are exposed to crime and people who are desperate and will do what they have to do to get money. That is why this is a very important case for the United States as well.

J.A. at 350-51.

Phillips contends that by these remarks, the prosecutor, in essence, asked the jury to convict him based not upon the facts of the case, but upon an emotionally charged, collective desire to send a message that bank robbers will be dealt with severely. Thus, Phillips argues that the issue of whether he was factually guilty of the specific crimes named in the indictment was pushed to the periphery by the prosecutor's comments, effectively becoming a non-issue. In this way, Phillips maintains, the comments were both improper and prejudicial.

5

It is clear that prosecutors may ask jurors to act as the "conscience of the community" as long as the comments are not intended to inflame the passions of the jury. United States v. Koon, 34 F.3d 1416, 1444 (9th Cir. 1994), cert. granted in part, 116 S. Ct. 39 (1995); United States v. Sanchez-Sotelo, 8 F.3d 202, 211 (5th Cir. 1993), cert. denied, 114 S. Ct. 1410 (1994); United States v. Solivan, 937 F.2d 1146, 1151 (6th Cir. 1991); United States v. Smith, 918 F.2d 1551, 1562-63 (11th Cir. 1990). Thus, prosecutors in narcotics cases "may stress to the jury the seriousness of drug charges and comment on the gravity of this country's drug problem." United States v. Dominguez, 835 F.2d 694, 700 (7th Cir. 1987).

Nevertheless, it is equally clear that prosecutors may not suggest through their closing comments that the jury should convict merely to make a statement against crime in general or to deter future crime as a matter separate and apart from the defendant's factual guilt. Such argument is improper because "[t]he amelioration of society's woes is far too heavy a burden for the individual criminal defendant to bear." United States v. Monaghan, 741 F.2d 1434, 1441 (D.C. Cir. 1984), cert. denied, 470 U.S. 1085 (1985). Thus, in United States v. Pupo, 841 F.2d 1235 (4th Cir.), cert. denied , 488 U.S. 842 (1988), we held improper the prosecutor's urging of the jury to"make that state- ment so that we can address these types of conspiracies that are taking place in our community." Id. at 1240. Such explicit references to the jury "making a statement" are patently inappropriate since they unabashedly invite the jury to indulge its passions by looking beyond the evidence before it in rendering a verdict. Accord, Arrieta-Agressot v. United States, 3 F.3d 525, 527 (1st Cir. 1993) (vacating conviction because "[t]hroughout his closing argument the prosecutor urged the jury to view this case as a battle in the war against drugs, and the defendants as enemy soldiers"); United States v. Johnson, 968 F.2d 768, 771 (8th Cir. 1992) (holding improper prosecutor's urging jury in narcotics case to act as a "bulwark against . . . putting this poison on the streets"); Solivan, 937 F.2d at 1148 (holding improper prosecu- tor's comment, "And I'm asking you to tell her and all of the other drug dealers like her that we don't want that stuff in Northern Ken- tucky . . .").

A balance must be struck within these parameters. In the instant case, the trial court ruled that the prosecutor's comments "clearly

6

crossed the line" of propriety. J.A. at 56. Specifically, the trial court held that the prosecutor's suggestion "that the witness bank tellers, some of whom were visibly upset during their testimony, might again be robbed, coupled with his assertion that the government has a strong interest in protecting them and other bank tellers, could well have indicated to the jurors that, regardless of whether the defendant's guilt had been proven beyond a reasonable doubt, they should convict him so as to try to prevent future bank robberies." Id.

Although we have reservations about the trial court's conviction in this regard, we need not definitively decide whether the prosecutor's remarks were improper because we conclude, as did the trial judge, that the remarks did not substantially prejudice Phillips so as to deprive him of a fair trial. Francisco, 35 F.3d at 120.

The court considers several factors in determining whether a prosecutor's comments deprive a defendant of a fair trial:

> (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

United States v. Harrison, 716 F.2d 1050, 1052 (4th Cir. 1983), cert. denied, 466 U.S. 972 (1984). After considering these factors, the trial court concluded that Phillips was not prejudiced by the prosecutor's closing argument. Specifically, the trial court found:

> The evidence against the defendant, although largely circumstantial, was very strong. The prosecutor's improper remarks were not extensive and in the court's view were not placed before the jury to [divert] its attention. The majority of government counsel's closing argument was focused on the evidence in the record, which as stated above, was quite strong. Under these circumstances, the court does not

7

> believe that the improper comments prejudiced the defen-
> dant in any way.

J.A. at 57 (footnote omitted).

We agree with the trial court that the prosecutor's comments did not substantially prejudice Phillips. First, it perhaps understates both the weight and scope of the evidence offered by the government to characterize it as "strong." An abridged recounting of the evidence introduced at trial suffices to make the point. Mr. Boatwright testified that the robber had a badly chipped and decayed front tooth similar to that of the defendant. In addition, Mr. Boatwright testified that he saw the robber jump into a van, identified through a license plate check as the van hired by Phillips on the day of the robbery and present at the scene. Furthermore, bundles of coin wrappers of the type used almost exclusively by the Merchants Bank were found in Lynette Davis's apartment where Phillips spent most of the afternoon following the robbery. Ms. Davis testified that she had never seen the wrappers before that afternoon. Finally, cash was found stuffed in a sneaker belonging to Phillips at Ms. Davis's apartment. Such evidence of Phillips's guilt is compelling.

Second, the challenged comments were a minor part of the prosecution's closing. Indeed, the remarks consist of only a page and a half of the trial transcript while the closing argument itself is comprised of almost thirty pages of transcript. Thus, the court can only characterize the remarks as isolated and not extensive.

Third, we credit the trial court's conclusion that the challenged comments were not made with the intent to divert the attention of the jury. Rather, they were made to exhort the jury to consider the government's law enforcement interest together with the defendant's liberty interest in the case. In considering the challenged argument, quoted supra, we find first an explication of the defendant's interest as protected by the standard of proof beyond a reasonable doubt. Next we find an explication of the prosecution's interest in law enforcement generally and in avoidance of crime generally. Only then is there any reference to the particular status of tellers in relation to criminal acts.

8

Finally, although the remarks may have had an emotional bent, appealing to the jurors to consider those on the"front lines" of a potent criminal advance, this factor standing alone does not warrant a new trial in this case in light of the other factors discussed. See United States v. Morsley, 64 F.3d 907, 913 (4th Cir. 1995) (finding that although prosecutor's erroneous remark that defendant had pled guilty to one of the charges in the indictment certainly could have misled the jury by implying that defendant tacitly admitted he was guilty of other charges in the indictment, reversal was unwarranted where other Harrison factors militated against finding of substantial prejudice), cert. denied, 116 S. Ct. 749 (1996). In short, Phillips cannot show that he was substantially prejudiced by the prosecutor's closing remarks about the evils regularly visited upon bank tellers.**1** Accordingly, his argument here is unavailing.

B.

Phillips also argues that the prosecutor improperly shifted the burden of proof to the defendant through some of the other comments made in closing argument. Specifically, Phillips objects to a line of argument employed by the prosecutor that highlighted the failure of defense counsel to establish certain facts concerning the coin wrappers. The challenged argument is reproduced below:

> Now Mr. Bittner brought out on his cross-examination of Agent Graves, he said, well, isn't it true that the guy that make[s] this kind of wrapper[ ] make[s] like three quarters of a billion of them, something like that. But it was interesting that Mr. Bittner did not come forward with any evidence to show you, well, okay where do the people that manufac-

_____

**1** We note that even if Phillips could show that the prosecutor's comments substantially prejudiced him, he would additionally be required to show that the prosecutor's misconduct constituted plain error since he objects to the comments for the first time on appeal. Mitchell, 1 F.3d at 242. "The plain error doctrine is to be employed only in `those circumstances in which a miscarriage of justice would otherwise result.'" Id. at 239 (internal quotations omitted) (quoting United States v. Young, 470 U.S. 1, 15 (1985)). We do not believe such circumstances are present in this case.

ture the wrappers sell them? The evidence shows very clearly they don't sell them around here. They may sell them all over the rest of the country but here Boise Cascade controls the market.

And there was, Mr. Bittner also asked Mr. Graves, well, did you go to other places like credit unions [to see if they used the wrappers in question]? Yes, sir, I did. Isn't it interesting there was no follow up question for Mr. Bittner at that point. You may have been sitting there thinking, okay, well, what is the question: What did you find at the credit unions? Mr. Bittner wasn't about to ask that question of Agent Graves.

J.A. at 365-66.

Phillips asserts that these comments suggested to the jury that the defendant had a burden to produce evidence of his innocence. We disagree. It is true that the prosecutor was arguing an inference that the reason defense counsel did not elicit particular testimony from Special Agent Graves was because the testimony would have undermined the defendant's account of events. However, "[a]n inference is a way to carry the burden, and no more changes it than does damning evidence." United States v. Sblendorio, 830 F.2d 1382, 1391 (7th Cir. 1987), cert. denied, 484 U.S. 1068 (1988). Furthermore, although the prosecutor may not ask the jury to infer guilt from the fact that the defendant has invoked his fifth amendment privilege not to testify, Griffin v. California, 380 U.S. 609 (1965),"[a] prosecutor may properly comment upon a defendant's failure to present witnesses so long as it is not phrased as to call attention to defendant's own failure to testify," United States v. Fleishman, 684 F.2d 1329, 1343 (9th Cir.), cert. denied, 459 U.S. 1044 (1982); see also United States v. Parker, 903 F.2d 91, 98 (2d Cir.) (noting that a prosecutor is "entitled to comment on a defendant's failure to call witnesses to contradict the factual character of the government's case, . . . as well as his failure to support his own factual theories with witnesses") (alteration in original) (quoting United States v. Bubar, 567 F.2d 192, 199 (2d Cir.), cert. denied, 434 U.S. 872 (1977)), cert. denied, 498 U.S. 872 (1990); Sblendorio, 830 F.2d at 1391 (noting that "[t]he defendant's decisions about evidence other than his own testimony do not implicate the

10

privilege, and a comment on the defendant's failure to call a witness does not tax the exercise of the privilege"). Certainly it follows that a prosecutor may comment upon a defendant's failure to elicit certain testimony on cross-examination as long as the comment does not highlight the defendant's decision not to testify. Because Phillips does not argue, nor could he, that the prosecutor's comments improperly accentuated his invocation of the fifth amendment privilege against self-incrimination, Phillips cannot show that the challenged remarks were improper.**2** His argument on this point, therefore, fails.

III.

Phillips pressed two other grounds for reversal at oral argument. First, Phillips contends that the trial court erred by allowing Special Agent Graves to testify, during re-direct examination, concerning the absence of fingerprints at the crime scene after the court had denied a motion in limine brought by the government seeking the admission of such evidence. Second, Phillips asserts that the trial court erred by denying defense counsel's motion for a mistrial after Ms. Davis made reference in her direct testimony to the fact that Phillips was housed in a halfway house pending trial on the bank robbery count. Both arguments lack merit.

---

**2** Phillips points out that the jury submitted a series of notes to the trial court asking, in essence, whether the government was required to turn over exculpatory information to the defendant. From these questions, Phillips infers that the jury was under the mistaken impression that the defendant shoulders the burden of producing evidence of his innocence. We are not as certain as Phillips as to the meaning of the jury's queries. Indeed, the notes may manifest anything along a broad continuum, from idle curiosity to the belief that the defendant was "sandbagged." More-over, the jury was clearly instructed that the burden of proof rests exclusively with the government, never shifting to the defendant to prove his innocence. J.A. at 409. Indeed, the prosecutor in rebuttal made the same point, stating that "there is no burden or obligation on the part of the defense to produce evidence." Id. at 405. Thus, we cannot accept Phillips's contention that the jury was misinformed about the nature of the government's burden.

11

A.

The government, in a motion in limine, sought to have Special Agent Graves qualified as an expert witness to testify about the infrequency with which fingerprints are left at the scene of a bank robbery. The motion was denied and the government was barred from seeking the admission of the expert fingerprint evidence. On cross-examination, however, defense counsel asked Special Agent Graves a series of questions regarding the absence of fingerprints inside the bank. J.A. at 312-14. On re-direct, the government, over the objections of defense counsel, elicited testimony from Special Agent Graves as to why fingerprints might not have been found inside the bank. Phillips argues that the admission of this evidence constituted error since Special Agent Graves had not been qualified as an expert witness.

Although Phillips is correct that the testimony could not be received as expert evidence, it was admissible as opinion testimony by a lay witness pursuant to Fed. R. Evid. 701. District courts have broad discretion to admit lay evidence -- such evidentiary rulings will be disturbed on appeal only for an abuse of discretion. United States v. Heater, 63 F.3d 311, 320-21 (4th Cir. 1995), cert. denied, 116 S. Ct. 796 (1996). Defense counsel opened the door to the fingerprint testimony by suggesting on cross-examination that because Phillips's fingerprints were not found inside the bank, it was less likely that Phillips was the robber. Under these circumstances, it was not error to allow the government an opportunity to rebut the inference floated by defense counsel and to leave it to the jury to accept or reject Special Agent Graves's testimony. Accordingly, the trial court did not abuse its discretion by admitting the challenged testimony into evidence.

B.

During direct examination, Lynette Davis, an adverse government witness, made reference to the fact that Phillips was stationed in a halfway house while awaiting trial. Defense counsel immediately moved for a mistrial. The court denied the motion, opting instead to give a curative instruction as follows:

12

> Well, very frequently an individual who has been accused of a crime, I emphasize accused of a crime, such an individual is often times required to reside in a halfway house pending trial. That is precisely what occurred with respect to Mr. Phillips. He was accused by an indictment returned by a grand jury and given that he was pending trial required to reside in a halfway house.
>
> Now what is most significant is that Mr. Phillips's residency in a halfway house is completely irrelevant to whether he is guilty or not guilty of the crime with which he is charged, and that consideration will be completely disregarded by the members of the jury in reaching a determination of the case.

J.A. at 229. Phillips believes this instruction was insufficient to cure the alleged prejudice and that a mistrial was warranted.

The denial of a motion for a mistrial is reviewed on appeal for an abuse of discretion. United States v. West, 877 F.2d 281, 287-88 (4th Cir.), cert. denied, 493 U.S. 959 (1989). The instruction given by the trial court in this case satisfactorily quelled any potential prejudice flowing to Phillips from the inadvertent comment. See United States v. Moore, 710 F.2d 157, 159 (4th Cir.) (holding that reference by FBI agent to defendant as a "fugitive," by itself, not sufficient to show prejudice where curative instruction given by trial court), cert. denied, 464 U.S. 862 (1983). Thus, the trial court did not abuse its discretion in denying Phillips's motion for a mistrial.

IV.

Phillips raises three additional arguments in his papers, all of which lack merit. First, Phillips argues that his second trial on the current charges, the one ending in a hung jury, was prosecuted in violation of the Double Jeopardy Clause because the prosecutor intentionally elicited prejudicial testimony from a detective during the first trial (to the effect that Phillips had a "record") for the sole purpose of "goading" defense counsel to move for a mistrial. See Oregon v. Kennedy, 456 U.S. 667, 676 (1982). The trial court rejected this contention. Its factual finding concerning the prosecutor's intent is reviewed on

13

appeal for clear error. <u>United States v. Borromeo</u>, 954 F.2d 245, 247 (4th Cir.), <u>cert. denied</u>, 505 U.S. 1212 (1992).

Phillips has not made even a colorable argument that the prosecutor intentionally elicited the offending evidence as a mechanism to sabotage the trial. The prosecutor simply asked the detective how he located the defendant after the robbery. J.A. at 81-82. It defies common sense to suggest that the prosecutor's innocuous question was calculated to elicit a response concerning Phillips's record. Accordingly, the trial court's determination that the detective's statement evidenced inadvertence rather than misconduct on the part of the prosecutor will not be disturbed.

Second, Phillips asserts that the third trial violated the Double Jeopardy Clause because jeopardy attached after the court committed reversible error during the second trial -- specifically, Phillips contends that the district court erroneously failed to authorize the production of transcripts of the first trial on an expedited basis so as to allow counsel for Phillips to prepare effectively for the second trial -- an error which Phillips maintains prevents the government from seeking a third trial.

After the conclusion of the first trial, defense counsel moved to have a transcript of the proceedings produced to aid in preparation for the second trial which was scheduled to commence four days hence. The court denied the motion with the caveat that if witnesses testified differently at the second trial, the court would order a delay to allow transcripts to be produced and would give defense counsel an opportunity to re-call any witnesses to the stand for additional cross-examination based upon the transcripts. Inevitably, during the second trial defense counsel asserted that a witness was testifying differently. As advertised, the court ordered the transcript prepared and defense counsel was allowed an opportunity to finish cross-examination with the aid of the transcript.

The trial court did not commit error. Indeed, defense counsel ultimately did not cross-examine the witness on the alleged inconsistencies. Defense counsel maintains, however, that the court's initial failure to order the transcripts prepared was so prejudicial that double jeopardy attached after the second mistrial. This argument is specious.

14

Finally, Phillips maintains that the trial court erred by admitting certain photographs into evidence. Mr. Boatwright, the teller whom the robber approached and asked for coin wrappers a few minutes before presenting his demand note to an adjacent teller, recalled that the robber had a badly chipped, decayed eyetooth adjacent to his upper incisors. Before the first trial, the government sought to have photographs taken of Phillips's teeth. Eventually, Phillips allowed the photographs to be taken (he was uncooperative at first). However, unbeknownst to the government, Phillips arrived at the photo session wearing crowns on his teeth that effectively concealed the chipped nature of his teeth. After discovering the ruse, and after the second mistrial, the government was able to get a second set of photographs of Phillips's teeth, this time without the crowns. The government then moved both sets of photographs into evidence at the third trial, over the objections of defense counsel, in part to show Phillips's consciousness of guilt. This was a proper use of the photographs and the trial court did not abuse its discretion in so admitting them. Heater, 63 F.3d at 320-21. Moreover the trial court gave an appropriate limiting instruction delineating the proper use of such evidence. See Supplemental Appendix at 23.

V.

Although we affirm Phillips's bank robbery conviction, we vacate the bank larceny conviction. We recently noted in United States v. Walker, 75 F.3d 178 (4th Cir. 1996), that "[i]t is undisputed that bank larceny is a lesser-included offense of bank robbery." Id. at 180. We cited United States v. Amos, 566 F.2d 899 (4th Cir. 1977) (per curiam), for that proposition. Indeed, in Amos itself we held "[i]t was not the intent of Congress by the various sections of 18 U.S.C. § 2113 to create a number of distinct crimes for a single bank robbery . . . and it is impermissible to impose sentence under more than one section of a single transaction . . . . It is just as impermissible to impose concurrent sentences as it is to impose consecutive sentences . . . ." Id. at 901 (alteration in original) (quoting Walters v. Harris, 460 F.2d 988, 994 (4th Cir. 1972), cert. denied, 409 U.S. 1129 (1973)); see also United States v. Carter, 540 F.2d 753, 754 (4th Cir. 1976) (observing that "[l]arceny, in fact, is generally regarded as a necessarily included offense in the crime of robbery"); United States v. Brittain, 41 F.3d 1409, 1415 (10th Cir. 1994) (holding that bank lar-

15

ceny is a lesser included offense of bank robbery). <u>Contra United States v. Gregory</u>, 891 F.2d 732, 734 (9th Cir. 1989) (reasoning that since bank larceny "contains a specific intent element which need not be proved in the bank robbery context," bank larceny is not a lesser-included offense of bank robbery). Accordingly, we vacate Phillips's conviction for the lesser-included offense of bank larceny. <u>See Amos</u>, 566 F.2d at 901.

<u>AFFIRMED IN PART AND VACATED IN PART</u>

16