IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-40342
Summary Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GILBERTO CRUZ-RIVAS,
also known as Alejandro Garcia-Rojas,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Southern District of Texas
(L-96-CR-282)

_____

January 30, 1998

Before JOLLY, BENAVIDES, and PARKER, Circuit Judges.

PER CURIAM:[*]

The appellant, Gilberto Cruz-Rivas, appeals from his convictions for conspiracy to possess

marijuana and possession with intent to distribute marijuana in violation of 21 U.S.C. §§

841(a)(1), 841(b)(1)(B), & 846. The issue on appeal is whether the evidence was sufficient to

support these convictions. For the reasons set forth below, we AFFIRM.

---

[*]   Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and
is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

Cruz-Rivas argues that the evidence was insufficient to support his drug convictions.  This court reviews the sufficiency of the evidence to determine whether any reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt.  <u>United States v. Martinez</u>, 975 F.2d 159, 160-61 (5th Cir. 1992).  In making this determination, the court views the evidence in the light most favorable to the government, <u>United States v. Shabazz</u>, 993 F.2d 431, 441 (5th Cir. 1993), and all reasonable inferences from the evidence are construed in accordance with the jury's verdict, <u>Martinez</u>, 975 F.2d at 161.  Moreover, "[j]uries are free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may be reasonably drawn from the evidence."  <u>United States v. Flores-Chapa</u>, 48 F.3d 156, 161 (5th Cir. 1995).

In order to prove possession of marijuana with intent to distribute, the government must prove that Cruz-Rivas knowingly possessed marijuana and intended to distribute it.  <u>United States v. Sanchez-Sotelo</u>, 8 F.3d 202, 208 (5th Cir. 1993).  Possession may be actual or constructive, may be joint among several defendants, and may be proved by direct or circumstantial evidence.  <u>Id.</u>

In order to convict a defendant of conspiring to possess marijuana with intent to distribute, the government must prove: (1) the existence of an agreement between two or more persons to violate the narcotics laws, (2) that the defendant knew about the conspiracy, and (3) that the defendant voluntarily participated in the conspiracy.  <u>Id.</u>  An agreement may be inferred from circumstantial evidence.  <u>Id.</u>

II.

2

The facts of this case are not in dispute. On September 12, 1996, the United States Border Patrol in Hebbronville, Texas, received information that a large amount of narcotics was going to be transported on Highway 1017, a highway that is notorious for alien and narcotics smuggling because there is no permanent manned checkpoint on the highway. On that same day, while on "roaming patrol," Agent Benito Montiel observed an older model Crown Victoria traveling northbound. Because he recognized the driver and passenger, Agent Montiel began following the Crown Victoria. When he caught up with the vehicle, he noticed a third person was trying to hide in the back seat. Because he suspected that aliens were being smuggled, he stopped the car. While Agent Montiel was talking with the occupants of the first car, he saw a black Lincoln Town Car also heading north on Highway 1017. Because he was familiar with the Town Car from previous drug investigations, Agent Montiel sent his partner to stop that car. Agent Montiel, however, remained with the Crown Victoria. Shortly thereafter, Agent Montiel saw a third vehicle traveling northbound on Highway 1017. Immediately behind the third vehicle, Agent Montiel observed two trucks also heading northbound, each of which were occupied by a single male driver.

Agent Montiel testified that it was his experience that drug smugglers commonly used "scout vehicles" as lead vehicles, and then "decoy vehicles," which are then followed by the vehicles actually transporting the narcotics. In this case, Agent Montiel believed that the Lincoln Town Car was probably a decoy vehicle. A two-way radio found inside the Crown Victoria further increased his suspicions that drugs were being transported.

Agent Montiel then saw the two trucks turn into a ranch gate, which led to a private ranch road that eventually exited onto Highway 285. Agent Montiel further testified that these trucks

3

were not familiar to him as vehicles that normally used that ranch road. Based on these observations, Agent Montiel radioed for assistance.

When border patrol agents arrived at the ranch road, they found both trucks, abandoned but still running. Each truck was loaded with marijuana. Agents also found a two way radio, similar to the one found in the Crown Victoria, in one of the trucks. The border patrol agents then found two sets of footprints emerging from the trucks and traveling east. One of the footprints had the plain heal of a walking boot, while the other had a "real thick running 'W'" that is seldom seen. The footprints were also "zigzagging," which is a tactic used by drug smugglers to lose the trackers. Agents tracked the sets of footprints for approximately a mile and a half.

After approximately an hour of tracking the footprints, the agents discovered Cruz-Rivas lying in the brush. Near where Cruz-Rivas was hiding, the agents lost the tracks they had been following, but found another set of footprints with a "lug boot or cleated boot." When Cruz-Rivas was apprehended, he was wearing a "lug boot or cleated boot." He also had a bag with him that contained another pair of boots that matched the "thick running 'W'" footprint that the agents had been following.

Upon apprehension, Cruz-Rivas told the border patrol agents that he had been walking in the brush for five days. Cruz-Rivas, however, did not meet the normal profile of an illegal alien who had been walking in the brush for five days. According to testimony, illegal aliens who have been walking in the brush are normally tired, wet, dirty, muddy, and smell bad. In addition, they usually carry food, a jug of water, and backpacks so that they can use both hands to push through the brush. They also usually wear long sleeve shirts, which protect them from both the sun and the brush.

4

In contrast, when arrested, according to agents, Cruz-Rivas was clean, dry, clean-shaven, and smelled good. He was also carrying a suitcase-type bag and wearing a T-shirt. Moreover, he was not carrying any food or water. Finally, after he was arrested, Cruz-Rivas identified himself as Alejandro Garcia-Rojas, and stated: "I don't have anything to say because you didn't catch me with anything."

On October 8, 1996, Cruz-Rojas was indicted for conspiracy to possess with intent to distribute marijuana, possession with intent to distribute in excess of 100 kilograms of marijuana, and illegal entry into the United States. On December 3, 1996, Cruz-Rivas pleaded guilty to the illegal entry offense, and on December 4, 1996, a jury found him guilty of the two drug offenses. On March 3, 1997, the court sentenced Cruz-Rivas to ninety-seven (97) months imprisonment and a five (5) year term of supervised release. This appeal followed.

III.

According to Cruz-Rivas, the facts set forth above at best place him only in a "climate of activity that reeks of something foul," which, standing alone, cannot support a federal drug conviction. United States v. Robertson, 110 F.3d 1113, 1119 (5th Cir. 1997) (quoting United States v. Galvan, 693 F.2d 417, 419 (5th Cir. 1982)). Contrary to Cruz-Rivas's contentions, however, he was not convicted merely because of his proximity to the drugs. Instead, the evidence clearly shows that there were two tracks of footprints leading from the trucks loaded with marijuana, one of which led to the defendant, who in turn had boots in his bag matching one of the tracks of footprints. Moreover, his explanation for his presence in the brush was entirely

implausible. Based on this, the jury could reasonably conclude that he was a driver of one of the trucks.

Likewise, Cruz-Rivas's argument that he was convicted merely because he used a different name when arrested, which was completely consistent with his illegal presence in the United States, is unpersuasive.[1] Similar to his mere presence argument, this is not a case where the defendant was convicted merely because he used a false name. Instead, the false name, the footprints leading directly to him from the trucks loaded with marijuana, and the implausible explanation for his presence in the brush were more than sufficient to allow the jury to conclude that he was not attempting to conceal his illegal presence in the country, but, rather, that he was attempting to conceal his culpability and distance himself from the trucks full of marijuana that he had abandoned.

For these reasons, we find that the evidence was sufficient to support Cruz-Rivas's drug convictions. Accordingly, we AFFIRM.

---

[1]   In support of this argument, Cruz-Rivas cites <u>United States v. Garza-Bocanegra</u>, No. 91-2675 at 3, 6 (5th Cir. Mar. 30, 1992) (unpublished), and <u>United States v. Flores-Chapa</u>, 48 F.3d 156, 162-63 (5th Cir. 1995).