**R E V I S E D**
**February 25, 1998**

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 97-60213

---

UNITED STATES OF AMERICA

Plaintiff-Appellee,

VERSUS

JAMES LOWERY

Defendant-Appellant.

---

Appeal from the United States District Court
For the Southern District of Mississippi,
Jackson Division

---

February 19, 1998

Before REYNALDO G. GARZA, DUHE', and STEWART, CIRCUIT JUDGES.

PER CURIAM:

This is an appeal from the United States District Court for the Southern District of Mississippi, the Honorable William H. Barbour, Jr., presiding. The Defendant-Appellant, James Lowery ("Lowery"), was found guilty of obstruction of justice, in violation of Title 18, U.S.C. §1512(b)(1). Lowery timely appealed, and the matter now lies before this panel.

1

## Background

Lowery was a businessman in Jackson, Mississippi, and the owner-operator of a gentleman's club called the Legends Cabaret. Lowery, in his capacity as owner and operator of Legends Cabaret, hired Bonnie Sanders ("Sanders") as an exotic dancer and Betty Murphy ("Murphy") as a maintenance and clean-up person. Arthur Taylor ("Taylor") was the son of Murphy and an acquaintance of Lowery. Sanders was Lowery's girlfriend.

Sanders was the target of an investigation for tax-evasion by the Internal Revenue Service ("IRS") and IRS Special Agent Phil Hull ("Agent Hull"). She was indicted on two counts of tax-evasion and tried in the Southern District of Mississippi before Judge Henry T. Wingate ("the Sanders trial").[1] Sanders was found guilty on one count of tax evasion, but Judge Wingate set aside the conviction. This case arises from incidents surrounding the Sanders trial.

Subsequently, James Lowery was indicted and tried for obstruction of justice. He was convicted, and sentenced to imprisonment for thirteen (13) months, payment of a fine of $2,000, and a special assessment of $100. Lowery is presently serving said sentence. Lowery's theory of defense during his trial was that during the time leading up to the Sanders trial, he encouraged Taylor (through Taylor's mother, Murphy) to testify truthfully.

---

[1]*United States v. Sanders*, Cause No. 3:96CR38WN.

Lowery claimed that the IRS realized the weakness of its position while investigating the Sanders case, and began to pressure witnesses to testify in a manner consistent with the IRS position.

Lowery spoke with Murphy regarding the testimony of her son, Taylor, during the course of the investigation. Lowery claims that he was aware that Taylor made statements to Sanders' attorney consistent with her innocence, and he feared the IRS was intimidating Taylor to state otherwise. During the course of a conversation with Murphy in which this matter was discussed, Lowery and Murphy got into an argument, and Lowery fired her. Immediately thereafter, Murphy went to the IRS, reported the incident, and went back to speak with Lowery while wearing a wire. It is these conversations which are at the core of the instant case, and are central to the underpinnings of Lowery's affirmative defense.

Title 18 U.S.C. §1512(d) states an affirmative defense for obstruction of justice as follows:

> (d) in a prosecution for an offense under this section, it is an affirmative defense, as to which the Defendant has the burden of proof by a preponderance of the evidence, that the conduct consisted solely of lawful conduct and that the Defendant's sole intention was to encourage, induce and cause the other person to testify truthfully.

Lowery claims that he did nothing illegal and was merely trying to encourage Murphy and Taylor to tell the truth, as is allowed under this affirmative defense. He coupled this with an argument stating that the IRS, and particularly Agent Hull, was obsessed with convicting Sanders, and that the IRS was intimidating witnesses to

3

achieve their ends.

The prosecution filed a Motion In Limine at the outset of the trial, which sought to prevent Lowery from introducing evidence, testimony, and the ultimate outcome of the results of the Sanders trial. Judge Barbour believed that such evidence and testimony was irrelevant, granted the Motion In Limine, and excluded such evidence. He also sustained objections made by the prosecution when testimony which related back to the Sanders trial was given. Lowery claims that the grant of this Motion In Limine, coupled with the exclusion of certain necessary evidence and testimony during the trial, prevented him from being able to present his defense. He moved for mistrial twice during the trial on this issue. The prosecution prevailed at the trial level, and the appeal now lies before us.

## Standard of Review

A district court's evidentiary rulings are reviewed for abuse of discretion. *United States v. White*, 972 F.2d 590, 598 (5th Cir. 1992). The abuse of discretion must create the likelihood of prejudice to the defendant and the substantial right at issue must be made known to the court. *United States v. Tansley*, 986 F.2d 880, 886-887 (5th Cir. 1993). However, even if the district court erred in its evidentiary rulings, such error can be excused if it was harmless error. *United States v. Capote-Capote*, 946 F.2d 1100,

4

1105 (5th Cir. 1991).  A nonconstitutional trial error is harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict."  *Kotteakos v. United States*, 328 U.S. 750, 776 (1946); *see also United States v. Sanchez-Sotelo*, 8 F.3d 202, 210 (5th Cir. 1993).

## Analysis

The key issue is whether the district court erred in granting the Motion In Limine (and subsequent rulings relating to the Motion), and if so, whether such error was harmless.  We hold that such error did occur, and the error was not harmless.  Therefore, we reverse and remand this case for new trial.

The district court excluded evidence from and with reference to the Sanders trial on the grounds that such matters were irrelevant to Lowery's case.  This was error, because any evidence that the IRS was intimidating witnesses in the Sanders case would be relevant to Lowery's case, given that his theory of defense was that he was trying to encourage witnesses to tell the truth in the face of IRS pressure to do otherwise.  It is well established that a criminal defendant is entitled to present his theory of defense, including witnesses, testimony, and exhibits.  *See United States v. Partin*, 493 F.2d 750, 763 (5th Cir. 1974).  The grant of an overly broad Motion In Limine, coupled with related rulings on introduction of certain evidence and testimony, prevented Lowery

5

from properly presenting his theory of defense to the extent necessary for a fair trial.

It is true that Lowery was able to discuss his affirmative defense to some degree during the trial. His attorney discussed the affirmative defense during his argument, Lowery was able to testify about it, and it was included in the jury charge. However, the Motion In Limine and related rulings prevented Lowery from being able to develop and prove his case. Throughout the trial, whenever the defense tried to elicit testimony which would have supported the affirmative defense, the prosecution objected, stating that such testimony related back to the Sanders trial, and hence, violated the Motion In Limine. Such objections were consistently sustained. Lowery was unable to prove his case, and the issues which he claimed to be at the center of his affirmative defense were relevant. Therefore, the district court erred in its grant of the Motion In Limine and in its related rulings.

The prosecution argues that the effect of admission of evidence and testimony regarding the Sanders trial would be cumulative in addition to being irrelevant. We do not believe this to be the case. The extent to which Lowery was able to discuss and attempt to prove his affirmative defense was quite limited. Given that Lowery wasn't able to show very much to prove his defense, the information which the Lowery was trying to elicit, particularly from Agent Hull, would have not been cumulative. The information sought by Lowery, if it existed and was true, would have helped

develop and support his theory of defense, and would not have been "piling on." The decision of the district court cannot be supported on the grounds that the evidence Lowery tried to introduce was cumulative.

The district court's grant of the Motion In Limine left Lowery little more than the ability to make unsubstantiated and (in practice, given the situation) unprovable claims on the witness stand. Lowery's hands were tied. Further, it can be argued that he was made worse off by arguing his theory without being allowed to substantiate it, because without substantiation his theory of defense looked like a desperate conspiracy theory. The information Lowery sought was necessary to prove his defense, and it cannot be said that the effect on the jury's verdict was insubstantial or harmless. Therefore, the decision of the district court in this matter constitutes abuse of discretion and reversible error.

## Conclusion

James Lowery was unable to properly conduct his defense at the trial level due to the district court's grant of the Motion In Limine and related rulings. This was not harmless error. Accordingly, we REVERSE AND REMAND for a new trial, one which allows Lowery to fully develop his affirmative defense.

REVERSED AND REMANDED.