# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-10979

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOSEPH DEMONT ANDERSON,

Defendant-Appellant.

United States Court of Appeals
Fifth Circuit

**FILED**

June 20, 2014

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Northern District of Texas

Before STEWART, Chief Judge, and DENNIS and ELROD, Circuit Judges.

CARL E. STEWART, Chief Judge:

Defendant-Appellant Joseph Demont Anderson ("Anderson") was convicted by a jury of aiding and abetting bank robbery. On appeal, he challenges his conviction, sentence, and various rulings by the district court. For the reasons explained herein, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In February 2012, a federal grand jury charged Anderson and Jeremy Butler ("Butler") in a one-count indictment with aiding and abetting each other in the commission of a bank robbery in violation of 18 U.S.C. §§ 2113(a) and 2. Anderson pleaded not guilty and proceeded to trial where he was the lone defendant. The evidence presented at trial showed that around 2:15 p.m. on January 18, 2012, Butler entered a Chase Bank branch in Dallas, Texas

wearing something to cover his face and demanded money from a teller. The teller placed approximately $6,500 in a bag along with a tracking device. Butler then exited the bank through the front door, ran around the side of the bank, and jumped over a fence into someone's back yard. A witness testified that Butler appeared to know exactly where he was running after he exited the bank. Around the time Butler was inside of the bank, a witness who lived in the neighborhood behind the bank saw a gold Grand Marquis driving slowly down his street. The witness testified that as the car traveled down his street, he saw a man—who appeared to have something covering his face—jump over his neighbor's fence and enter the Grand Marquis.

Around the same time, Dallas Police Department received a call for a bank robbery and officers were immediately dispatched to the area near the Chase Bank. The bank's tracking device led officers to a Grand Marquis occupied by three men. When officers attempted to stop the Grand Marquis, its occupants—Butler, Teddy Rogers ("Rogers"), and Anderson—exited the vehicle and ran. The men were eventually apprehended and transported to the police station for questioning.

While in custody at the police station, Anderson signed a *Miranda* waiver and participated in an interview with a Dallas Police Department detective and a Federal Bureau of Investigation ("FBI") agent. The interview was captured by video and audio recording. During the interview, Anderson explained, *inter alia*, that he had no idea that Butler planned to rob a bank. Anderson stated that he simply agreed to give Butler a ride across town. According to Anderson, Butler exited his vehicle near the Chase Bank and when Butler did not return, Anderson and Rogers decided to leave Butler. Anderson claimed that as he was driving, Butler appeared out of nowhere and reentered his vehicle. Anderson stated that even after Butler reentered his vehicle, he was not aware of the fact that Butler had just robbed a bank.

No. 12-10979

The government charged Anderson and Butler with aiding and abetting bank robbery but did not charge Rogers. Prior to his trial, Anderson filed a motion to suppress "all statements taken from [him] at the time of his arrest and during custodial interrogation in an interview room." The district court denied the motion. After a short trial, the jury convicted Anderson of aiding and abetting bank robbery. The United States Probation Office prepared a Presentence Investigation Report ("PSR") that recommended: (1) that Anderson be classified as a career offender because his prior burglary conviction was a crime of violence; (2) that his criminal history category was IV; (3) that his total offense level was 32; and (4) that his United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range was 210 to 240 months' imprisonment followed by a term of not more than three years of supervised release. Anderson objected to the PSR on the grounds that his prior burglary conviction did not qualify as a crime of violence. The district court overruled the objection, adopted the PSR's Guidelines calculation, and sentenced Anderson to 210 months' imprisonment followed by a three-year term of supervised release. Anderson timely appealed his conviction and sentence.[1]

## II. DISCUSSION

### A.

On appeal, Anderson challenges the district court's denial of his motion to suppress his interrogation video. "When reviewing the denial of a motion to suppress, we review findings of fact for clear error and conclusions of law *de novo*." *United States v. Jenson*, 462 F.3d 399, 403 (5th Cir. 2006) (citation

---

[1] Anderson filed a motion to supplement the record on March 18, 2014. The government filed a motion to supplement the record on March 26, 2014. The government also moved to place its motion to supplement the record under seal. These motions are hereby granted.

3

omitted).    All facts should be construed in the light most favorable to the prevailing party.  *Id.*  "[A] district court's determination regarding the validity of a defendant's waiver of his *Miranda* rights is a question of law reviewed de novo, but this court accepts the factual conclusions underlying the district court's legal determination unless they are clearly erroneous."  *United States v. Solis*, 299 F.3d 420, 439 (5th Cir. 2002) (citation and internal quotation marks omitted).

In order to use an in-custody statement against a defendant at trial, the government must demonstrate that the defendant was warned of his right to remain silent and his right to consult with an attorney.  *See Miranda v. Arizona*, 384 U.S. 436, 471 (1966).    "When a defendant challenges the voluntariness of a confession, the government must prove its voluntariness by a preponderance of the evidence in order for the confession to be admissible as substantive evidence at the defendant's criminal trial."  *United States v. Bell*, 367 F.3d 452, 461 (5th Cir. 2004) (citation and internal quotation marks omitted).  We consider the totality of the circumstances to determine if "the statement is the product of the accused's free and rational choice," and thereby voluntary.  *Id.*  A confession is involuntary if it was derived from "coercive police conduct" and a causal link exists between that conduct and the confession.  *Id.*

Having reviewed the interrogation video and other evidence in the record, we affirm the district court's denial of Anderson's motion to suppress. Anderson alleges that the coercion at issue in this case began when he was "roughed-up" at the scene of his arrest.    The evidence in the record demonstrates that an officer landed on top of Anderson at the end of the foot chase.  Officer Fifield testified that the individual who fell on top of Anderson, Officer Henderson, pulled his hamstring and accidently fell on top of Anderson as a result.  According to Officer Fifield, Officer Henderson was transported to

No. 12-10979

Baylor hospital by ambulance as a result of his injury. A finding that Officer Henderson accidently fell on top of Anderson would not be clearly erroneous. Furthermore, Officer Henderson was not present during Anderson's interrogation and no law enforcement officer insinuated that there would be further physical contact if Anderson exercised his right to remain silent.

Next, Anderson alleges that shortly after he was arrested, an officer told him that he was going to prison for forty years. The district court heard testimony, outside the presence of the jury, from Anderson and Officer Otto on the issue of whether such a statement was made. The government impeached Anderson with his prior felony convictions during his testimony on this issue. Officer Otto denied making such a statement or hearing any other officer make such a statement. After assessing the evidence, the district court credited Officer Otto's testimony that neither he nor any other officer told Anderson that he was going to prison for any period of time. Accordingly, we defer to the district court's credibility determination and finding that no officer told Anderson that he was going to prison for forty years. *See United States v. Gibbs*, 421 F.3d 352, 356–57 (5th Cir. 2005) (stating that this court should adhere to the clearly erroneous standard to an even greater extent when a denial of a motion to suppress is based upon live testimony). Nevertheless, even if an officer made such a statement to Anderson, it was not made in the context of his interrogation and discussions about potential prison sentences, without more, do not generally amount to coercion. *See United States v. Rico*, 51 F.3d 495, 507 (5th Cir. 1995). Moreover, no evidence in the record demonstrates that anyone told Anderson that he would be sentenced to forty years if he did not agree to waive his *Miranda* rights.

Finally, Anderson argues that his will was overborne by the size of the law enforcement officers and their bombarding him with false accusations. Even taking Anderson's characterization of the events as true, this circuit has

No. 12-10979

held that similar tactics do not generally constitute coercion or intimidation. *See Bell*, 367 F.3d at 462–63 (holding that the officers' interrogation techniques—including false statements—were not coercive). Additionally, the interrogation video demonstrates that the officers introduced themselves to Anderson and immediately provided him with *Miranda* warnings. Anderson was not handcuffed during the interview, the officers never displayed any weapons, and they never placed their hands on him. Furthermore, Anderson had significant contact with law enforcement prior to the instant arrest. His experience with the criminal process makes it less likely that his confession was involuntary. *See United States v. Hearn*, 563 F.3d 95, 104 (5th Cir. 2009) (considering Defendant's experience with law enforcement when deciding that she knowingly and voluntarily forfeited her *Miranda* rights).

The totality of the circumstances support the conclusion that Anderson was properly apprised of his *Miranda* rights and that his confession was knowing and voluntary. Therefore, the district court did not err by denying Anderson's motion to suppress his interrogation video.

**B.**

At trial, the defense attempted to call Teddy Rogers—the unindicted passenger in Anderson's car on the day of the incident—as a witness. The government informed the district court that Rogers was represented by counsel in a separate criminal matter and that there were potential Fifth Amendment implications regarding his testimony in Anderson's trial. The district court questioned Rogers—outside of the presence of the jury—as to whether he wished to assert his Fifth Amendment right. Rogers initially stated that he would waive his Fifth Amendment right and testify at Anderson's trial. After meeting with an attorney, however, Rogers decided to exercise his Fifth Amendment right to not testify.

6

No. 12-10979

On appeal, Anderson alleges that an off-the-record conversation occurred "in open court" between the government and the district court where the government stated that it would indict Rogers if he testified for the defense. Rogers was not present for this alleged conversation. The only evidence of the substance of this conversation is the assertion made in Anderson's brief on appeal. However, the trial record indicates that an "[o]ff-the-record discussion" took place just after Anderson's motion for judgment of acquittal. Anderson argues that the government attempted to prevent Rogers from testifying by informing the court that it would indict Rogers if he testified on behalf of Anderson. Anderson claims that the government did not truly intend to indict Rogers and only used the potential indictment as a "ruse" to keep Rogers off of the witness stand.

Whether the government substantially interfered with a defendant's right to present witnesses and establish his defense is a fact question. *United States v. Bieganowski*, 313 F.3d 264, 291 (5th Cir. 2002). Accordingly, this court generally reviews prosecutorial intimidation claims for clear error. *Id.* However, because this claim was not raised before the district court, we review it for plain error. Fed. R. Crim. P. 52(b); *United States v. Smith*, 31 F. App'x 158, *3 (5th Cir. 2001) (per curiam) (unpublished) (holding that plain error analysis applied to allegations of witness intimidation that were not raised at trial). "A district court's decision to exclude a witness' testimony based on an invocation of the witness' Fifth Amendment privilege is reviewed for an abuse of discretion." *United States v. Kinchen*, 729 F.3d 466, 475 (5th Cir. 2013).

"Threats against witnesses are intolerable. Substantial government interference with a defense witness' free and unhampered choice to testify violates due process rights of the defendant." *United States v. Goodwin*, 625 F.2d 693, 703 (5th Cir. 1980). In order to demonstrate substantial government interference, "the defendant must show a causal connection between the

No. 12-10979

governmental action and the witness' decision not to testify." *See Knotts v. Quarterman*, 253 F. App'x 376, 381 (5th Cir. 2007) (unpublished) (citing *Bieganowski*, 313 F.3d at 291–92; *United States v. Thompson*, 130 F.3d 676, 687 (5th Cir. 1997)).

We note that there is no information in the record to substantiate Anderson's version of events. However, even assuming arguendo that the alleged off the record conversation occurred in the manner in which Anderson asserts, we conclude that the government did not substantially interfere with Rogers's choice to not testify at Anderson's trial. It is important to note that the record does not indicate that the government had any conversations with Rogers with respect to the consequences of testifying as a witness in Anderson's case. Instead, the record shows that the government informed the district court and Anderson's counsel of Rogers's status and the district court decided to question Rogers to ensure that he felt comfortable testifying. After Rogers indicated that he was willing to testify, he told the district court that he wanted to speak with an attorney before making a final decision. The district court asked Rogers why he wanted to speak with an attorney and Rogers stated: "I can tell the state what I told them before, but I would rather have an attorney right here with me though, you know what I'm saying, just for—for my safety . . . ."

After Rogers met with his attorney, the attorney questioned Rogers on the record about their discussion with respect to the potential implications of Rogers testifying. Rogers's attorney asked him the following question:

> And, basically, what it came down to, I asked you after I explained kind of the different scenarios and what could happen and potential outcomes, I explained to you that it's your choice, you have an absolute right to testify or to invoke your Fifth Amendment right and you understood that. Is that correct?

8

Rogers answered "[y]es, sir."  Rogers then explained that he wished to exercise his Fifth Amendment right because he felt that he could possibly incriminate himself by testifying.  The colloquy between Rogers and his attorney demonstrates that Rogers's decision to not testify was a result of a deliberative process free and clear of government intimidation.  During questioning by his attorney and the district court, Rogers never indicated that he did not want to testify because he was afraid that the government would indict him.  Therefore, there is no causal nexus between the alleged governmental action and Rogers's decision to not testify. *See Bieganowski*, 313 F.3d at 291–92.  Accordingly, Rogers's claim of error on this issue is without merit.

## C.

During the course of the trial, the district court made several evidentiary rulings that were adverse to Anderson.  He challenges on appeal (1) the district court's decision to exclude evidence regarding a prior bank robbery committed by Butler; (2) the district court's decision to exclude Rogers's interrogation video; and (3) the district court's decision to exclude certain evidence related to Butler's mental condition.  "A district court's evidentiary rulings are typically reviewed for abuse of discretion." *United States v. Pruett*, 681 F.3d 232, 243 (5th Cir. 2012) (citation omitted).  "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *United States v. Ragsdale*, 426 F.3d 765, 774 (5th Cir. 2005) (citation and internal quotation marks omitted).  Any abuse of discretion by the district court is subject to a harmless error analysis and a ruling should be reversed only if it substantially prejudiced the defendant's rights. *See United States v. Morgan*, 505 F.3d 332, 339 (5th Cir. 2007) (per curiam).  We will address Anderson's challenges to the district court's evidentiary rulings in turn.

No. 12-10979

*i. Butler's Prior Bank Robbery*

Anderson attempted to present evidence to the jury showing that Butler robbed a Bank of America two weeks prior to the incident in question. He claimed that Butler, without Anderson's assistance, executed the Bank of America robbery in the same exact fashion in which he executed the bank robbery at issue in this case. According to Anderson, the evidence was admissible under Federal Rule of Evidence ("FRE") 406, which allows for the admission of "habit evidence." The government moved in limine to exclude this evidence, arguing that it was irrelevant. The district court agreed with the government and excluded any evidence related to Butler's prior bank robbery.

Under FRE 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence is generally admissible unless it falls under a specific prohibition. Fed. R. Evid. 402. FRE 406 provides that "[e]vidence of a person's habit . . . may be admitted to prove that on a particular occasion the person . . . acted in accordance with the habit . . . ." Fed. R. Evid. 406. "To offer evidence of a habit, a party must at least demonstrate a regular practice of meeting a particular kind of situation with a specific type of conduct." *United States v. Heard*, 709 F.3d 413, 434 (5th Cir. 2013) (citation and internal quotation marks omitted). "Habit suggests a regular response to a repeated specific situation that has become semi-automatic." *Id.* (citation and internal quotations omitted).

Anderson argues on appeal that evidence related to Butler's prior solo bank robbery was crucial and probative to his defense because it made it more probable that Butler acted alone on January 18, 2012. Anderson's defense at trial was that he, in good faith, gave Butler a ride without any knowledge of Butler's proclivity toward robbing banks and without knowledge of Butler's intent to commit a bank robbery on January 18, 2012. Therefore, Anderson

argues, he was erroneously precluded from presenting his "affirmative defense of good faith and lack of knowledge." Anderson relies on *United States v. Lowery* for the proposition that he was entitled to present evidence supporting his affirmative defense. 135 F.3d 957 (5th Cir. 1998) (per curiam).

We conclude that the district court did not abuse its discretion by excluding evidence related to Butler's prior bank robbery. The district court has significant discretion in determining whether evidence is relevant to the issues at trial. *United States v. Masat*, 948 F.2d 923, 933 (5th Cir. 1991). Anderson provides no authority supporting the notion that details of one of Butler's prior criminal acts are probative to Anderson's guilt or innocence in this case.[2] Moreover, this evidence does not meet the threshold requirements for habit evidence under FRE 406 because there was no evidence that robbing banks alone was Butler's "regular practice." *See Heard*, 709 F.3d at 434. The fact that Butler committed *one* prior bank robbery alone does not demonstrate that on January 18, 2012, he acted in conformity with a habit of committing bank robberies alone.

Furthermore, Anderson's reliance on *Lowery* to support the admissibility of his purported affirmative defense is unpersuasive. In that case, the defendant was convicted of obstruction of justice in violation of 18 U.S.C. § 1512(b)(1). *Lowery*, 135 F.3d at 958. Lowery's conviction was based upon his attempt to influence a witness' testimony in a criminal trial. *Id.* Lowery's defense theory was that he simply encouraged the witness to testify truthfully. *Id.* at 958–59. 18 U.S.C. § 1512(e) provides a statutory affirmative defense to obstruction of justice. To successfully assert this affirmative defense, a

---

[2] To the contrary, we explained in *United States v. Nelson* that in the context of multi-party criminal endeavors, one individual's history of independent criminal conduct does not make it more or less probable that other parties were involved in the alleged joint criminal conduct at issue. 242 F. App'x 164, 172 (5th Cir. 2007) (unpublished).

defendant must prove by a preponderance of the evidence that his conduct was lawful and his "sole intention was to encourage, induce or cause the other person to testify truthfully."  18 U.S.C. § 1512(e).  At trial the district court excluded evidence that would have aided Lowery in proving his affirmative defense.  *Lowery*, 135 F.3d at 959.  This court reversed and remanded for a new trial holding that the district court's ruling stifled Lowery's right to assert his affirmative defense.  *Id.* at 960.  Unlike the defendant in *Lowery*, Anderson fails to cite any authority demonstrating that "good faith and lack of knowledge" is an affirmative defense to aiding and abetting bank robbery.  Nor are we aware of such a case.  Therefore, Anderson's assertion that he acted with "good faith and lack of knowledge" is more appropriately characterized as his defense theory as opposed to an affirmative defense.  While Anderson is permitted to submit evidence to the jury to support his defense theory, he is not permitted to submit evidence that is irrelevant to the issues at trial.

The ultimate issue for the jury at Anderson's trial was whether the government proved beyond a reasonable doubt that Anderson aided and abetted Butler in a bank robbery on January 18, 2012.  Anderson's defense theory of "good faith and lack of knowledge" focused on his state of mind at the time of the offense.  Butler's prior bank robbery—which Anderson does not claim to have been aware of at the time of the instant offense—is not relevant to Anderson's state of mind.  Anderson cites no case law supporting the proposition that he was entitled to present evidence showing that Butler, on one prior occasion, committed a bank robbery without his assistance.  Accordingly, we conclude that the district court did not abuse its discretion by excluding evidence related to Butler's prior bank robbery.

ii. *Rogers's Interrogation Video*

After Rogers asserted his Fifth Amendment right to not testify, Anderson attempted to enter Rogers's interrogation video into evidence in lieu of his live

testimony.  Anderson intended to offer the video for the purpose of showing: (1) Rogers's perception of Butler's mental state; (2) that Anderson did not know Butler; (3) that Rogers and Anderson had no idea that Butler was going to rob a bank; (4) that Butler offered Anderson gas money; (5) that Rogers did not break into a house with Butler; (6) that Anderson tried to make Butler get out of his car after the robbery; (7) where Anderson, Rogers, and Butler were sitting in the car; and (8) the specific details regarding the direction Anderson was traveling when he picked Butler up after the robbery.  The district court excluded Rogers's interrogation video because it contained inadmissible hearsay.  The district court also found that the statements in the video were cumulative of other evidence presented in the case.

On appeal Anderson makes no arguments as to why the interrogation video falls under a hearsay exception.  He also abandons the arguments he made below—that Rogers's interrogation video was admissible as a statement against interest or a present sense impression—and acknowledges that his claim is foreclosed by *Williamson v. United States*, 512 U.S. 594, 600 (1994).  Anderson simply encourages this court to reflect upon the impact the exclusion of this evidence had on his defense.  Having considered Anderson's position on this issue, we perceive no error in the district court's decision to exclude Rogers's interrogation video.

### iii.  *Evidence Related to Butler's Mental Condition*

The district court also excluded Butler's interrogation video and still photographs taken from the video.  The defense sought to introduce this evidence "so the jury could see how bizarre Butler was acting that night."  The defense wanted the jury to see that Butler "was sleeping on the floor . . . making strange movements and generally appeared to be in a comatose mental state."  Anderson's theory was that Butler's mental condition, evinced by his abnormal behavior on video, would show the jury that Butler acted alone and Anderson

No. 12-10979

had no knowledge of Butler's intent to rob a bank.  Anderson cites no authority and provides no legal analysis explaining how the district court erred by excluding the evidence.    In reviewing the district court's decision and reasoning, we conclude that the district court did not abuse its discretion by excluding this evidence.

## D.

During Anderson's closing argument, his attorney directed the jury's attention to the indictment and argued that the government engaged in "overreaching."  Anderson's defense lawyer stated:

> Now, ladies and gentlemen, you're entitled to absorb all the evidence in this case.  Look at the indictment in this case.  Who's on that indictment . . . Now, look at the facts of this case.  Joe Anderson and Teddy Rogers and Jeremy Butler.  Joe Anderson and Teddy Rogers picked up Butler.  Joe Anderson and Teddy Rogers went down to fill up the car with water with Mr. Butler in the back.  Joe Anderson and Teddy Rogers left Mr.  Butler standing in the median. Joe Anderson and Mr. Rogers picked up Mr. Butler after the–after the robbery took place. Joe Anderson and Mr. Rogers both ran from the car.  All right?  Joe Anderson is the one I guess they're—I mean, Joe—Mr. Rogers is the one, I'm assuming, they're trying to insinuate was in the house with Mr.—with Kool-Aid.[3] Look on the indictment. Whose names appear on the indictment?

Anderson's defense lawyer's point was that the government overreached because it charged Anderson but did not charge Rogers even though Rogers was similarly situated to Anderson.  The government responded to Anderson's argument during its rebuttal by stating:  "Teddy Rogers.  Now, [Anderson's defense lawyer] opened the door, and this is in direct response to his argument. Let me tell you why Teddy Rogers isn't in the indictment.  Because he's incarcerated in the state looking at up to life in prison."  Anderson objected and the district court responded to the objection by stating: "The jury will disregard

---

[3] "Kool-Aid" is Butler's nickname.

14

that statement." Anderson did not request and the district court did not provide any further curative instructions in response to the government's comments. Anderson also did not request a mistrial based upon the prosecutor's comments.

On appeal, Anderson argues that the prosecutor's statements regarding Rogers facing life in prison in state court referenced facts not in evidence at trial. Accordingly, Anderson claims that his conviction should be reversed because the prosecutor's comments violated his Fifth Amendment due process rights. Because Anderson failed to properly preserve his claim of error regarding the prosecutor's reference to facts not in evidence, we review this claim only for plain error. *See United States v. Salinas*, 480 F.3d 750, 756 (5th Cir. 2007). Although Anderson timely objected to the comments, the district court sustained his objection and Anderson did not request a mistrial or a curative instruction. Accordingly, he "effectively received all of the relief that he requested from the district court." *Id.* "When a defendant asks this court to reverse a conviction under these circumstances, the defendant essentially asks us to go against the implicit judgment of both the trial court and the defendant's trial counsel that the trial court's corrective action was adequate and appropriate." *Id.* (citation and internal quotation marks omitted). As a result, the challenged comments are reviewed under the plain error standard. *Id.*

"A prosecutor is confined in closing argument to discussing properly admitted evidence and any reasonable inferences or conclusions that can be drawn from that evidence." *United States v. Mendoza*, 522 F.3d 482, 491 (5th Cir. 2008). A prosecutor is prohibited from referring to any evidence that was not admitted at trial. *Id.* When assessing the prejudice sustained by a prosecutor's improper remarks, the determinative question is whether the remarks "cast serious doubt on the correctness of the jury's verdict." *See*

No. 12-10979

*United States v. Guidry*, 456 F. 3d 493, 505 (5th Cir. 2006) (citation and internal quotation marks omitted).  More specifically, there are three factors we consider in deciding whether to reverse a conviction due to improper comments by a prosecutor: "(1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction."  *United States v. Palmer*, 37 F.3d 1080, 1085 (5th Cir. 1994) (citation omitted).

"Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding."  *United States v. Young*, 470 U.S. 1, 11 (1985).  To demonstrate reversible plain error, Anderson must show that the prosecutor's remarks were improper, the error was clear or obvious and the error affected his substantial rights.  *See United States v. Escalante-Reyes*, 689 F. 3d 415, 419 (5th Cir. 2012) (en banc).  The final consideration in our plain error analysis is "whether the error affects the fairness, integrity, or public reputation of judicial proceedings such that the appellate court should exercise its discretion to correct the error."  *Id.* at 425 (citation and internal quotation marks omitted).

Anderson argues that the prosecutor's comment during his rebuttal argument was improper.  He notes that the magnitude of the comment was significant because it caused jurors to infer that Anderson associated with serious offenders and therefore, was not the unsuspecting victim of being in the wrong place at the wrong time pursuant to his defense theory.  Anderson also argues that the district court's general instruction to the jury—that any statements made by lawyers are not evidence—was insufficient to cure the inflammatory effect of the prosecutor's comments.  Finally, Anderson asserts that because the government's proof was circumstantial and the case against him was generally weak, his substantial rights were prejudiced by the

prosecutor's comment. Therefore, according to Anderson, his conviction should be reversed and the case should be remanded for a new trial.

The government concedes that the prosecutor's comment was improper. However, the government claims that the comment was "minimally prejudicial because it was responsive to the defense's argument that Rogers's non-indictment should somehow result in a reasonable doubt as to Anderson's guilt." The government further asserts that the comment was isolated and a small part of a much longer rebuttal argument. Additionally, the government argues that the district court's instructions mitigated any harm from the comment. Finally, the government claims that any error was harmless because evidence of Anderson's guilt was substantial.

The government correctly concedes that the comment it made during rebuttal was improper. Although the comment may have been invited by Anderson's statements during his closing argument, such an invitation does not grant the government leave to delve into evidence that was not admitted at trial. *See United States v. Gallardo-Trapero*, 185 F.3d 307, 320 (5th Cir. 1999) ("While AUSA Fielden could respond to the defense attorneys' statements in her closing argument, she cannot base her arguments on facts not in evidence. . . .").

### i. *Prejudicial Effect of Prosecutor's Remarks*

There are several reasons why the prosecutor's comment—that Rogers was not charged because he faced a life sentence in state court—could be classified as prejudicial. The comment provides no context for Rogers's potential life sentence at the state level. The jury could have inferred that Rogers faced a life sentence for his involvement in the instant bank robbery. Left to speculate, the jury could have concluded that Anderson's association with Rogers makes it more likely that he was guilty of the instant bank robbery. Alternatively, if jurors assumed that Rogers's potential life sentence

was not associated with the instant bank robbery, they could infer from Rogers's further involvement in the criminal system—for a seemingly very serious offense—that he would also involve himself in the instant bank robbery, and accordingly, so would Anderson. Therefore, the comment could have had a prejudicial effect on the jurors in this case.

### ii. *Cautionary Instruction*

The district court simply instructed the jury to disregard the prosecutor's improper comment during his rebuttal. Anderson did not request a cautionary instruction and the district court provided no specific admonition to the jury. Despite the fact that no specific instruction was given at the time of the objection, the district court's charge to the jury included the general instruction that "any statements, objections, or arguments made by the lawyers are not evidence." This circuit recognizes the well-established presumption that jurors heed the district court's instructions. *See United States v. Skelton*, 514 F.3d 433, 446 (5th Cir. 2008). Accordingly, the court's instructions—that the prosecutor's comment should be disregarded and that attorneys' arguments are not evidence—were likely sufficient to cure any prejudice resulting from the improper prosecutorial comment.

### iii. *Strength of the Evidence Supporting Conviction*

Finally, we consider the strength of the evidence demonstrating that Anderson was guilty of aiding and abetting bank robbery. There seemed to be one primary dispute at trial—whether Anderson knew that Butler intended to rob the bank and agreed to assist by driving him to and from the bank. There was no disputing the fact that Anderson stopped his car in front of the bank; Butler exited Anderson's car and immediately robbed a bank; and Anderson picked Butler up on a different street just after the bank robbery.

Although there was arguably very little direct evidence of Anderson's intent to participate in the bank robbery, the circumstantial evidence was

substantial.    The jury reasonably concluded that it was more than a coincidence that Anderson's car stopped—for whatever reason—in front of the bank. The fact that just after the bank robbery Butler ran directly to the street where Anderson was driving slowly also appears to be more than a coincidence. Additionally, Anderson's decision to evade the police by running away, at the same time as Butler and Rogers, suggests that he had a guilty conscience. Anderson was also evasive of the investigator's questions during his interrogation.  His story changed several times and he admitted that he was not being completely up front at the start of the interview.  All of these facts demonstrate that the government's evidence was strong at trial.

### iv.  *Conclusion*

Balancing the three factors, we conclude that under a plain error analysis, the prosecutor's improper comment does not necessitate reversal of Anderson's conviction.  It is important to note that the comment actually had nothing to do with Anderson.   Instead, the comment was related to an unindicted person who may or may not have been involved in the commission of the bank robbery.   Furthermore, the jury was instructed to disregard the improper comment and the district court, on multiple occasions, explained that the lawyers' comments were not evidence.  Therefore, the jury is presumed to have disregarded the comment and exercised restraint in not relying on it as a reason to find Anderson guilty.   Finally, as discussed above, the evidence presented to the jury—excluding the improper comment—was more than sufficient to convict Anderson of aiding and abetting bank robbery.

### E.

Anderson also argues that the cumulative effects of the alleged errors committed at trial warrant reversal of his conviction.  Under the cumulative error doctrine, "relief may be obtained only when constitutional errors so fatally infect the trial that they violate the trial's fundamental fairness."

*United States v. Alaniz*, 726 F.3d 586, 628 (5th Cir. 2013) (citation and internal quotation marks omitted).

This court has recognized that "the cumulative effect of a series of errors may require reversal, even though a single one of those errors, standing alone, would not require such a result." *United States v. Villarreal*, 324 F.3d 319, 328 (5th Cir. 2003) (citation omitted). "The doctrine justifies reversal only in the unusual case in which synergistic or repetitive error violates the defendant's constitutional right to a fair trial." *United States v. Delgado*, 672 F.3d 320, 344 (5th Cir. 2012). This is "a rarity." *Villarreal*, 324 F.3d at 328 (citations omitted); *see also Delgado*, 672 F.3d at 344.  In the event that errors were committed, reversal is not always warranted because "the Constitution does not guarantee a perfect trial, only one that is fair." *United States v. El-Mezain*, 664 F.3d 467, 535 (5th Cir. 2011); *see also United States v. Isgar*, 739 F.3d 829, 841–42 (5th Cir. 2014).

Only one error was committed at trial—the prosecutor's reference to facts not in evidence.  Accordingly, we conclude that the cumulative error doctrine is inapplicable to this case.

## F.

Anderson filed two separate motions for a new trial: one on September 4, 2012 and another on September 21, 2012.  The September 4th motion argued that a new trial was warranted due to newly discovered evidence regarding inmates who claimed that Butler told them that Anderson was not involved in the bank robbery in any fashion.  The September 21st motion argued that a new trial was warranted because subsequent to the trial, Butler was allegedly found incompetent to stand trial.  The district court denied both motions.

"A district court's decision to grant or deny a motion for new trial pursuant to Rule 33 is reviewed for an abuse of discretion." *United States v. Wall*, 389 F.3d 457, 465 (5th Cir. 2004) (citation omitted).  This standard is

deferential to the trial court as the purveyor of the evidence presented at trial. *Id.* "Questions of law are reviewed *de novo*. On mixed questions of law and fact, this court reviews the underlying facts for abuse of discretion, but the conclusions to be drawn from those facts *de novo*." *Id.* (citation omitted)

Federal Rule of Criminal Procedure 33 permits a district court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. This court generally disfavors granting motions for new trials based upon newly discovered evidence. *Wall*, 389 F.3d 467. There are five prerequisites that must be satisfied to justify a new trial on that basis:

> (1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the failure to detect the evidence was not due to a lack of diligence by the defendant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence if introduced at a new trial would probably produce an acquittal.

*Id.* (citation omitted). The defendant is required to prove each element in order to prevail. *Villarreal*, 324 F.3d at 325. This circuit has acknowledged that "a motion for new trial may not be based on inadmissible evidence." *Wall*, 389 F.3d at 470–71 (citing *United States v. Parker*, 903 F.2d 91, 102–03 (2d Cir. 1990); *United States v. MacDonald*, 779 F.2d 962, 964 (4th Cir. 1985)).

*i. September 4th Motion for New Trial*

The September 4th motion is based upon several inmates' statements alleging that Butler told them that Anderson was unaware of his plan to rob a bank. Anderson argues that the inmates' testimony undermines the verdict in this case. He argues that "the only basis for the jury to return a guilty verdict was that they did not believe Anderson that he had no idea Butler was planning on robbing a bank." Therefore, according to Anderson, reversal is warranted. We disagree. The newly discovered evidence that Anderson proffers in his September 4th motion for new trial constitutes inadmissible

hearsay. This court has acknowledged that a new trial should not be granted based upon newly discovered evidence that would be inadmissible at trial. *See Wall*, 389 F.3d at 470–71. Accordingly, we conclude that the district court did not abuse its discretion by denying Anderson's September 4th motion for a new trial.

### ii. September 21st Motion for New Trial

The September 21st motion is based upon the allegation that subsequent to Anderson's trial, Butler was found incompetent to stand trial for his role in the instant bank robbery. There are several reasons why Anderson's arguments on this issue are unpersuasive. We note—for the purpose of context—that the pivotal issue in this case was Anderson's knowledge and intent *at the time* of the offense. Anderson's arguments at trial and briefing on appeal suggest that he has a far more expansive view of what information is relevant to what—by all accounts—was the ultimate issue at trial. Anderson's view is misguided.

Butler's competency to stand trial had little relevance to his mental condition on the day of the offense, and, more importantly, the implications of his condition on Anderson's knowledge and intent to aid and abet bank robbery. The competency evaluation at issue was performed to determine whether Butler was competent to proceed with a trial or guilty plea—not whether his decision to commit a bank robbery was a result of mental illness.

Moreover, further evidence of Butler's mental condition was likely cumulative. Similar information was presented to the jury through Anderson's statements during his interrogation video and through the testimony of an inmate who observed Butler on the day of the offense. Anderson was given leave to argue to the jury at length about Butler's mental problems and his unpredictable behavior. Anderson is unable to demonstrate how additional information regarding Butler's competency would assist the jury in deciding

whether Anderson aided and abetted Butler in the commission of the bank robbery.    Accordingly, we conclude that the district court did not abuse its discretion by denying Anderson's September 21st motion for a new trial.

**G.**

Anderson also challenges on appeal the district court's finding that his prior burglary conviction under Texas Penal Code Ann. § 30.02 qualified as a crime of violence for the purpose of categorizing him as a career offender pursuant to U.S.S.G. § 4B1.1.  Before sentencing, Anderson objected to the PSR's classification of his prior burglary conviction as a crime of violence.  We review a district court's interpretation of the U.S.S.G. de novo.  *United States v. Calderon-Pena*, 383 F.3d 254, 256 (5th Cir. 2004) (en banc) (per curiam).  Under U.S.S.G. § 4B1.1(a), a defendant is a "career offender" and subject to an enhanced sentence if:

> (1) the defendant was at least eighteen years old at the time [he] committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

*United States v. Garcia*, 470 F.3d 1143, 1146 (5th Cir. 2006) (citation omitted).  For purposes of this section of the Guidelines, a crime of violence is any state or federal offense punishable by a term of imprisonment exceeding one year that: "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, . . . or otherwise involves conduct that presents a serious potential risk of physical injury to another."  *Id.* at 1146–47 (citing U.S.S.G. § 4B1.2(a)(1)-(2)) (internal quotation marks omitted).  The court should focus on the elements of the offense derived from the statute of conviction and not the particular conduct that led to the defendant's conviction.  *Id.* at 1147.

No. 12-10979

When a statute can be violated in a way that constitutes a crime of violence and in a way that does not, the court is free to review other judicial documents to make its determination as to the appropriate classification. *See United States v. Garcia-Arellano*, 522 F.3d 477, 480–81 (5th Cir. 2008). These documents include the indictment, judicial confession, and the district court's judgment. *See id.* at 481.

Anderson argues that his prior burglary conviction does not qualify as a crime of violence because there are several methods by which a defendant may commit a burglary under Texas Penal Code Ann. § 30.02, and at least one of the methods does not satisfy the requirements of generic burglary. Anderson notes that there is no document that indicates which subsection of § 30.02 he violated. Therefore, Anderson claims that his burglary conviction cannot qualify as a crime of violence under U.S.S.G. § 4B1.1. We disagree and conclude that the district court did not err by finding that Anderson's prior burglary conviction qualifies as a crime of violence.

This determination largely depends upon whether the district court correctly found, by reference to permissible documents, that Anderson pleaded guilty to committing burglary in the generic sense—that is by entering a dwelling without permission with the intent to commit a crime therein. In Anderson's judicial confession related to the prior burglary, he admitted to committing the offense as alleged in the indictment. His indictment included language from both Texas Penal Code Ann. § 30.02(a)(1) and § 30.02(a)(3). We have held that a conviction under subsection (a)(1) qualifies as a crime of violence because it is equivalent to the enumerated offense of generic burglary. *United States v. Garcia-Mendez*, 420 F.3d 454, 456–57 (5th Cir. 2005). However, subsection (a)(3) is not equivalent to the enumerated offense of burglary because a violation of subsection (a)(3) does not require proof of the defendant's *intent* to commit a crime in the dwelling. Having reviewed the

24

permissible documentation that accompanied the adjudication of the prior burglary conviction, we conclude that it qualifies as a crime of violence. Anderson admitted in his judicial confession that he entered his victim's home without consent with the intent to commit a theft. Therefore, the judicial confession makes clear that Anderson pleaded guilty to an offense that meets the elements of generic burglary. The district court properly treated this conviction as a crime of violence. Accordingly, we conclude that the district court did not err in finding that Anderson was a career criminal.

## III.  CONCLUSION

For the foregoing reasons, we affirm Anderson's convictions and sentence.